### DRUGAN v. CRABTREE.

(Circuit Court of Appeals, Fourth Circuit. May 10, 1924.)

No. 2141.

1. **Bankruptcy ⬅165(1)—Charging matured note by bank against maker's deposit not a "preference."**

  A bank has the right to charge a note of a depositor when due against his account, though it may know him to be insolvent, and such action does not constitute a "preference"; the two debts being subject to set-off, under Bankruptcy Act, § 68 (Comp. St. § 9652).

  [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Preference.]

2. **Bankruptcy ⬅164—Payment of bankrupt's note with its funds by an indorser held not a preference to him.**

  That an indorser on bankrupt's note to a bank, acting as its agent, paid the note by a check on its deposit in the same bank, held not to constitute a preference to him, where the note was due and the payment

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was made on the bank's insistence, and not at his instance, and where the bank might have applied the deposit without the check.

In Error to the District Court of the United States for the Western District of Virginia, at Abingdon; Henry Clay McDowell, Judge.

Action at law by M. F. Crabtree, trustee in bankruptcy of the Abingdon Produce Company against J. F. Drugan and another. Judgment for plaintiff against defendant Drugan, and he brings error. Reversed.

L. P. Summers, of Abingdon, Va. (H. E. Widener, of Abingdon, Va., on the brief), for plaintiff in error.

John J. Stuart, of Abingdon, Va. (D. M. Cosby, of Abingdon, Va., on the brief), for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. The plaintiff in error, along with the People's National Bank of Abingdon, Va., were sued at law in the United States District Court for the Western District of Virginia, by the trustee in bankruptcy of the estate of the Abingdon Produce Company, to recover the amount of two certain alleged preferences, one of $500, and the other of $1,500, claimed to have been secured by them against the estate of the bankrupt company. A brief recital of the facts in the case will be necessary to a correct understanding of the same.

The Abingdon Produce Company had been engaged buying and selling farm products of all kinds for several years. K. C. Eller was president, B. C. Eller vice president, and B. H. Eller secretary-treasurer and manager. The business was conducted on a large scale, and the company did its banking through the People's National Bank at Abingdon. The company some time in 1921 borrowed from the People's Bank $3,000, giving its note, indorsed by its president and secretary-treasurer, which note was also indorsed by the plaintiff in error, J. F. Drugan. It was understood, when the note was made, that it was to be paid at maturity. This was not done, and two curtails of $500 each were made, reducing the note to $2,000, for which amount it was several times renewed; the last renewal becoming due on June 30, 1922.

Early in June the company, finding it necessary to secure ready money to go on with its business successfully, and in order to meet its obligations, called in Mr. McConnell, cashier of the People's Bank, and certain of its stockholders, including the plaintiff in error, to confer with the directors of the company, and for several days full consideration was given to its affairs, with the result that its force was cut down and extra efforts made to realize on its assets. The secretary-treasurer, B. H. Eller, arranged to raise $1,000 on account of his indebtedness to the company, and the president, K. C. Eller, the sum of $2,000, to make good an obligation of the company. At this meeting the plaintiff in error was appointed financial agent, or financial supervisor, of the concern. The business was conducted during the remainder of the month of June, Drugan, who was also engaged in an

independent business in Abingdon, looking generally after the finances of the produce company, and only about $100 was cleared for the month. On the 22d of June, the services of the president having been dispensed with for the purpose of economy, it was agreed that he should be relieved from his indorsements on the $2,000 note aforesaid, held by the People's Bank, and accordingly, with that end in view, on the 22d of June, 1922, a new note was prepared with his name omitted, and B. H. Eller and J. H. Drugan indorsed the same. This note was made payable eight days after date, so as to fall due June 30, 1922, the date of the maturity of the old note.

About that time it appears that B. H. Eller, in order to liquidate his indebtedness to the company, borrowed $1,000 from his brother, of which $500 was by check, and $500 evidenced by the note of his brother, with good indorser, payable to his order. He deposited the check to the credit of the company, and endeavored to discount the note for $500, hoping to secure the indorsement of Drugan, which, however, he was unable to do, Drugan stating that he did not desire to further extend his liability. Drugan, however, took the note over to see what arrangement he could make with it at the bank. The bank refused to discount the note, even with Drugan's indorsement, unless the amount should be credited on the $2,000 note held by it. This was finally done, on or about the 29th of June, thereby reducing the produce company's liability on the note to $1,500. Upon the note maturing on the 30th of June, nothing was paid thereon. On the 1st of July, several checks of the company which it had drawn on the bank in anticipation of a deposit to meet them, went to protest. On the morning of Monday, the 3d of July, a deposit of $2,300 was made by the produce company, and on that morning the cashier of the bank called up Mr. Drugan at his place of business, and requested him to come to the bank, which he did, and was positively told by the cashier that the $1,500 note had to be paid. Mr. Drugan inquired how the same could be paid, and he was advised that the company had just deposited $2,300, out of which it could be paid, and requested him to give the bank a check for the amount, which he did, drawing a counter check in the produce company's name by him for the same, and the note was marked "Paid."

In answer to a question if any option was given to Drugan as to payment of the $1,500 that day, the cashier replied, "I told him the note had to be paid," and in answer to a further question as to whether Drugan ever suggested the payment of the note, the cashier said he had not, and that the payment in no way originated with him, but with the cashier, because he wanted the note paid, having carried the same something over a year, and he had assured his directors that he would not ask them to renew it again.

It is as to the payment of these two sums, of $500 and $1,500, respectively, out of the company's funds, that the controversy in this suit arises; it being claimed by the bankrupt's trustee that each payment constituted an unlawful preference, as well on the part of the bank receiving the same, as of the plaintiff in error, Drugan, the indorser on the notes.

The defendants duly appeared, and upon appropriate pleading is-
sue was joined, and a jury impaneled, and upon proofs adduced and
instructions of the court, returned a verdict in favor of the defend-
ant bank, and against Drugan, the plaintiff in error, for $2,000. On
motion to set the verdict aside, the court overruled the same, but up-
on condition that plaintiff would abate the judgment to the extent of
$500, being the Eller note for that amount, and upon the remittitur of
that sum being made, judgment was on the 28th of April, 1923, en-
tered against the plaintiff in error for $1,500, with interest from that
date. From this action this writ of error was sued out, and the as-
signments of error raise the question of whether or not the court erred
in its instructions given to the jury, and in not awarding a new trial
in its entirety, as prayed for.

The first, second, third, and fourth instructions relate to the mean-
ing of the words "insolvent" and "preference"; the fact that to avoid
a preference those receiving it, or to be benefited thereby, knew of the
insolvency on the 3d of July, 1922, and that the burden of proof was
on the plaintiff to establish the purpose. The court then proceeded
as follows:

"This burden is not borne, except by a preponderance of the evidence.

"(a) As to the bank: If you believe that the preponderance of the evidence
is that the cashier had reasonable cause to believe that the enforcement of
the transfer would effect a preference, you should find for the plaintiff as
against the bank, regardless of any question of set-off or of a banker's lien;
but, if the evidence does not so preponderate, you should find for the bank.

"(b) As to Drugan: If you believe that the preponderance of the evidence
is that Drugan had reasonable cause to believe that the enforcement of the
transfer would effect a preference, either in behalf of the bank or in behalf
of himself, or in behalf of both, you should find for the plaintiff as against
Drugan also; but, if the evidence does not so preponderate, you should find
in favor of Drugan."

"No. 5. The court instructs the jury that, if you should find for the plain-
tiff, you should find in the sum of $2,000. Whether this amount bears inter-
est or not is for you to determine, according as you think justice demands.
If you allow interest, you will also fix the date from which interest runs.

"No. 6. The court instructs the jury that, if they believe from the evidence
that the cashier of the People's National bank on July 3, 1922, had reason-
able cause to believe and did believe that the Abingdon Produce Company,
Incorporated, was solvent, although in fact it was not, you cannot find that
the bank had reasonable cause to believe that the enforcement of the transfer
then made would effect a preference, and in such event you shall find for
the defendant bank; and this same instruction applies in behalf of Drugan."

In considering the instructions, paragraphs (a) and (b) of instruc-
tion 4 as above quoted should be read in connection with instruction
No. 6, from which it will appear that the court in (a) and (b) told
the jury that, if either the bank or Drugan had reasonable cause to
believe that the enforcement of the transfer would effect a preference
in favor of either, they should find for the plaintiff, and, if the evi-
dence did not so preponderate, they should find for the defendants;
and in instruction 6, read in the same connection, the court instructed
that, if either the cashier of the bank or Drugan had reasonable cause
to believe and did believe that the Abingdon Produce Company was
solvent, although it was not, the jury could not find that either the
bank or Drugan had reasonable cause to believe that the enforcement

of the transfer then made would effect a preference. The proposition thus stated in the three instructions, read in connection with each other, would be absolutely sound, if nothing as to the bank's right of set-off had been stated, and there had been made an explanation and qualification so far as Drugan was concerned, based upon the facts of the case as applicable to him.

[1] First. In subsection (a) of instruction 4, in considering the circumstances under which the bank should be held liable, it is stated "regardless of any question of set-off or of a banker's lien." That statement can only be technically correct as to the bank, predicated upon the pleadings and the manner in which the payment was made, and, given without further explanation, necessarily operated most unfavorably to the defendant Drugan, when the circumstances are recalled under which he acted in what he did. The bank, at the date of this transaction, was clearly entitled under the law to charge the produce company's account with the amount of the note, and this without the consent of the company, or any indorser on the note, and as a matter of fact, had an indorser of the note had money to his credit in the bank at the time, it also could have been so charged, provided the maker of the note had not sufficient funds on hand to meet the same. This question is no longer an open one under the bankrupt law. New York County Bank v. Massey, 192 U. S. 138, 145, 148, 24 Sup. Ct. 199, 48 L. Ed. 380; Tomlinson v. Bank of Lexington (a decision of this court) 145 Fed. 824, 76 C. C. A. 400; Bankruptcy Act 1898 (as amended) § 68 (U. S. Comp. St. § 9652); Collier on Bankr. (12th Ed.) pp. 1095, 1096, 1097, and cases cited.

[2] Second. The elimination of the right of the banker to offset in this case, and the failure to make explanation of Drugan's connection with the transaction upon that theory, necessarily placed him in an erroneous position before the jury, assuming that an indorser could be held responsible on a note which had been extinguished by payment from the maker's funds. Kobusch v. Hand, Tr., 156 Fed. 660, 84 C. C. A. 372, 18 L. R. A. (N. S.) 660. He is left in the position of having appropriated the assets of the company to the payment of a debt evidenced by a note on which he was indorser, and thereby secured an unlawful preference, when that was an issue in the cause. He was an indorser, it is true, but he was acting in a fiduciary capacity only when he drew the check to pay the bank, in which position he had been placed by the company and the bank's cashier, to take charge of the finances of the company; and upon the note on which he happened to be an indorser falling due, and which it had been agreed should be paid to the bank at maturity, the bank insisted on its payment, and demanded of him that he give the check of the company to cancel the note, as such financial agent of the company. The bank could just as well have charged the account of the company with the note, but it insisted upon its being done the other way, and the company's check was then and there drawn, and signed by Drugan, who had been sent for for the purpose, and without previous thought or suggestion on his part, and the transaction was closed. To hold an indorser on a note which had been extinguished by payment out of

the maker's bank deposit liable under the circumstances here, in the absence of fraud, collusion, or other misconduct, would be going very far, and certainly ought not to be done, unless required by the plainest considerations of right and justice.

To state the matter in brief, a bank, at or after the maturity of a note held by it, may charge it against the deposit account of its maker, and this as well when the bank knows the latter is insolvent as when it does not. If there is some one secondarily liable upon the note, as surety or indorser, its payment in full in this as in any other way releases him from any claim the bank might otherwise have upon him. Nevertheless the trustee in bankruptcy of the maker may have the right to require him to return the preference he has in effect received, if he in any way knowingly contributed to bringing about a state of things which enabled the bank to do what it did, as, for example, by procuring a deposit of the maker's funds in order that they might become subject to the bank's lien. Mechanics' Bank v. Ernst, 231 U. S. 60, 34 Sup. Ct. 22, 58 L. Ed. 121; Wilson v. Citizens' Trust Co. (D. C.) 233 Fed. 697–700.

The bank did not need the maker's check to make lawful its application of the maker's money to the note. That for some reason it asked Drugan to sign a check as agent for the maker, and that he in compliance with its demand did so, are not in themselves, apart from any other circumstance, sufficient to show that he had any real part, either in inducing the bank to do what it did, or in creating an opportunity for it to do so. The jury should have been so instructed.

The decision of the District Court will be reversed, and a new trial awarded the plaintiff in error, in accordance with the views herein expressed, with costs.

Reversed.