## MURRAY v. CORN EXCHANGE BANK.

District Court, S. D. New York. November 30, 1927.

374

Charles L. Apfel, of New York City, for plaintiff.

Laughlin, Gerard, Bowers & Halpin, of New York City, for defendant.

FRANK J. COLEMAN, District Judge. This is an action by a trustee in bankruptcy to have certain payments to the defendant declared preferences in violation of the Bankruptcy Act (11 USCA), and to compel the defendant to pay over to the trustee the amounts involved.

The bankrupt, Peter H. Reilly & Bro. Company, Inc., was adjudicated such on December 17, 1925, the petition having been filed on December 4th. For a considerable period before that it had a regular deposit account with the defendant bank, and had borrowed from the bank on its demand promissory notes $3,425, secured by collateral supplied by persons not interested in bankrupt's business. On November 17, 1925, about two weeks before the filing of the petition in bankruptcy, the bankrupt drew its check on its regular deposit account with the defendant in the sum of $1,234.80, and delivered it to the defendant in payment of certain of the notes, with interest. Two days later, on November 19, it drew a second check in the sum of $1,700 and delivered it to the bank in part payment of the remaining note. Upon the delivery of these checks the insolvent received back most of the collateral, which its president thereupon delivered to the true owners, who happened to be his aunts. It is these two payments to the bank, aggregating $2,934.80, which the trustee seeks to have declared preferential.

■ There is no doubt but that the bankrupt was insolvent at the time of the payments, and furthermore I believe that the bank is chargeable with knowledge of that insolvency. The only question presented is whether or not the payments were preferences. The law is well settled, and the trustee in this case so concedes, that generally a bank may offset the amount of its loan against the deposit standing to the credit of an insolvent. It is further undisputed that if, instead of making a bookkeeping entry to show this offset, the bank accepts the check of the insolvent against his own account in payment of the loan, this mere change in form does not make the transaction a preference. The trustee's contention in the present case is that there was a purposeful accumulation of funds in the deposit account, made with the intent to pay the bank's claims, and that this, in view of the insolvency, made the payments preferential.

■ On November 6, 1925, 11 days before the first payment to the bank, the insolvent held a meeting of its creditors and divulged its insolvency. A committee of creditors was appointed to supervise the conduct of its business, and the insolvent was directed to make no further payment of any of its debts, except for current running expenses. Pursuant to that direction the bankrupt, on November 10, served notice on the bank to refrain from paying any notes that might be presented for payment. Business was continued up to and after the adjudication in bankruptcy, and from time to time, in the due course of business, deposits were made in the ordinary way in the banking account. On November 10, when the insolvent directed the bank to pay no further notes that might be presented, there was on deposit a few hundred dollars, which was not enough to pay the bank's claims, but was enough to pay the notes which were presented on that date by outsiders. Pursuant to direction, the bank refused to pay these and all subsequently presented notes. By November 17 and 19, when the bank received the checks in payment of its notes, there was sufficient in the deposit account to cover the payments and to

leave several hundred dollars still there, with this modification, that on November 19 the credit balance in the account was greater than the insolvent's check to the bank, but it represented in part funds that had not yet been collected from out of town banks.

Under these circumstances, I am unable to see that there was anything improper in the accumulation in the deposit account. The deposits were made in the ordinary course of business under the supervision of a creditors' committee, and the direction which the insolvent gave to the bank to refrain from paying any notes that might be presented was given at the behest of the creditors. They had specifically directed insolvent to make no payments except for current running expenses. The bank was not represented at the meeting of the creditors and took no part in the conduct of their committee, and I find no evidence whatever that it was aware, or should have been aware, of the direction to the insolvent to pay no debts, except as mentioned for current running expenses.

The bank's claims were amply secured, and it was a matter of indifference to it just how they were paid. While it is true the bank had knowledge that the collateral belonged to outside persons, and that its return to the insolvent would not increase the estate, still I do not believe that it was the bank's duty to protect one set of creditors rather than another. If its claims had been paid out of the collateral, the owners of the collateral would have had valid claims for the same amount against the insolvent. Though the claims of the owners of the collateral would have been paid only ratably with those of general creditors, still I do not think it was the duty of the bank to protect the general creditors at the expense of these owners. I find that the bank had no purpose or intent to favor either, and that it did not assume to make any choice as between them, but merely complied with the directions of the insolvent in the ordinary course of business.

Judgment is therefore directed for the defendant. Submit findings.