**PRUDENTIAL INS. CO. OF AMERICA v. NELSON.**

**In re CHICKAMAUGA TRUST CO.**

No. 7920.

Circuit Court of Appeals, Sixth Circuit.

Feb. 9, 1939.

Burnet Sizer, of Chattanooga, Tenn. (Sizer, Chambliss & Kefauver and J. B. Sizer, all of Chattanooga, Tenn., on the brief), for appellant.

Chas. S. Coffey, of Chattanooga, Tenn. (Chas. S. Coffey and Coffey, McCoy & Durand, all of Chattanooga, Tenn., on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is an appeal from a decree of the District Court denying a petition to review the order of the court's Referee in Bankruptcy.

The Chickamauga Trust Company, a Tennessee corporation, was adjudged a bankrupt on December 31, 1930. For many years prior to this adjudication it was an entrepreneur with The Prudential Insurance Company of America for procuring and making loans on real estate. So much of the contract between the parties as is material to a decision is as follows:

"Paragraph 2 provides that the correspondent shall submit applications for loans subject to the following conditions:

" '(a) The Insurance Company shall be the sole judge as to such applications as it may, in its *absolute discretion*, elect to approve.

" '(b) The Insurance Company shall be the sole judge as to such papers and documents, legal or otherwise, as it may require to be furnished; (1) when a loan applica-

tion is submitted for approval and (2) as a condition precedent to disbursement. In each and every case, however, the Correspondent shall furnish to the Insurance Company an accurate statement of the cost of the loan to the borrower by way of commissions presently payable and/or commissions payable on a deferred basis.

" '(c) The Insurance Company shall be the sole judge as to who shall furnish, examine and/or sign the documents mentioned, in sub-paragraph (b) preceding and shall be the sole judge as to whether or not such documents are satisfactory in form, execution and contents, and as to the legal sufficiency of the title to the security.' "

The Trust Company submitted to the Insurance Company for its approval, applications for loans and when approved, it procured and forwarded notes and mortgages payable to the Insurance Company signed and acknowledged by the borrower and at the same time an abstract of title.

In some cases the Trust Company advanced out of its own funds, less its expenses and commissions, the sum due the borrower and furnished to the Insurance Company satisfactory evidence of its payment. In others, it forwarded the loan contracts and supporting papers to the Insurance Company, together with a statement of its expenses and commissions. In the first type of cases, the Insurance Company remitted to the Trust Company; in the second, to the Trust Company or a designated depository which made disbursements to the borrower and the Trust Company for its commissions and expenses.

Under the first type of loan the binding contracts were on forms prepared by the Trust Company; in the others, on those of the Insurance Company.

The Trust Company collected for the Insurance Company both principal and interest on the loans, which were deposited to its account in the Hamilton National Bank or the First National Bank of Chattanooga, Tennessee. It mailed to the Insurance Company daily reports showing the amount of the collections and under its agreement was to also remit daily.

At the date of bankruptcy, the Trust Company was indebted to the Insurance Company in the sum of $115,000 for collections made, but not remitted.

Prior to bankruptcy and during the calendar year 1930, the Trust Company had submitted to the Insurance Company on

forms provided by the latter, nine applications for loans aggregating $10,663.40, which had been approved by the Insurance Company and the Trust Company notified. Subsequently the Trust Company had the borrowers execute notes and mortgages payable to the Insurance Company for the respective amounts and it paid to them out of its funds the face thereof, less its charges and commissions and charged against the respective borrowers the amounts of the loans.

At the time of bankruptcy the Insurance Company had approved only the applications for these loans and the Trust Company listed them as assets in its schedule filed in the bankruptcy proceedings. Between March 3 and April 1, 1931, the appellee, F. A. Nelson, Trustee in Bankruptcy for the Chickamauga Trust Company, forwarded by registered mail to the appellant, The Prudential Insurance Company of America, Newark, N. J., the completed papers covering the loans.

In all letters of transmittal the trustee advised the Insurance Company that the respective loan "having been completed according to the application and the terms and rules and regulations of The Prudential Insurance Company" he was inclosing the papers consummating the loan. He concluded his letter by requesting the Insurance Company to send him a check as soon as possible covering the amount due the Chickamauga Trust Company for the sums paid out by it on this account. The Insurance Company retained the notes and mortgages and advised the trustee that it was giving credit of $11,613.07 on the indebtedness of the Chickamauga Trust Company to it at date of bankruptcy.

Shortly thereafter the trustee filed his petition before the Referee in Bankruptcy praying that an order be entered in the proceedings directing the Insurance Company to pay to him the sum withheld by it. The Insurance Company answered and the matter was submitted to the Referee on a stipulation of facts and he ordered the Insurance Company to pay said sum to the trustee. On petition to review, the lower court sustained the Referee, hence this appeal.

■ The validity of the challenged decree depends upon the right of set-off in bankruptcy. The Bankruptcy Act, § 68a, 11 U.S.C.A. § 108(a), declares: "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the accounts shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

The words "debts" and "credits" as used in the Act are correlative. What is a debt on one side is a credit on the other. McCollum, Trustee v. Hamilton National Bank, 303 U.S. 245, 249, 58 S.Ct. 568, 82 L.Ed. 819.

■ The object of the Statute is to permit a statement of the account between the bankrupt and its creditors with a view to the application of the doctrine of set-off between mutual debts and credits. The provision of the Statute does not enlarge the doctrine of set-off and can be applied only where the general principles of set-off are present. The court applies it under the general principles of equity. Cumberland Glass Mfg. Company v. De Witt, 237 U.S. 447, 457, 35 S.Ct. 636, 59 L.Ed. 1042.

■ The principle upon which the rule proceeds is that in case of mutual debts, it is only the balance which is the real and just sum owing by or to the bankrupt. When the trustee was vested with title to the assets of the bankrupt, they were subject only to set-off of claims presently due the bankrupt. The rights of the parties being adjusted in equity as of the date of bankruptcy, all the trustee took as assets and all that he was required to pay was the balance subsequently accruing on the contract between the Trust Company and the Insurance Company. The fact that the debt owing to the bankrupt was not due at the date of his adjudication is immaterial.

■ If the Insurance Company's debt to the trustee did not accrue until after bankruptcy, then equity does not permit the set-off because as the debt of the Insurance Company did not exist when the estate of the bankrupt passed into the hands of the trustee, the equities of the bankrupt's other creditors intervene to prevent the depletion of the assets in the hands of the trustee by extinguishing a good debt due the estate by a bad one due a creditor from the estate.

■ In all cases of mutual debts, where the insolvency of one of the debtors and the rights of the other creditors in the assigned estate are involved, equity intervenes and modifies the legal right of set-off in order to promote equality and justice. Compare Scott v. Armstrong, 146 U.S. 499, 513, 13 S.Ct. 148, 36 L.Ed. 1059;

Western Powder Mfg. Company v. Brewerton Coal Company, 7 Cir., 81 F.2d 85; Standard Oil Company of New Jersey v. Elliott, 4 Cir., 80 F.2d 158; Hood v. Brownlee, 4 Cir., 62 F.2d 675.

The correct interpretation of the contract between the Trust Company and the Insurance Company determines the rights of the parties on this appeal. If the Insurance Company could have been compelled under the contract at the date of bankruptcy to accept the notes subsequently tendered it by the trustee, it is entitled to set-off. Conversely, if it had an option to accept or decline, it is without the right.

 In construing contracts, recourse must first be had to the language of the instrument. A true construction of the words or phrases used is the touchstone of legal right. They are to be interpreted according to their strict and primary acceptation unless from the context of the instrument and the intention of the parties to be collected from it they appear to be used in a different sense, the cardinal rule always being to give effect to the intention of the parties in the light of the surrounding circumstances. It is clear from the contract here in question that the Insurance Company retained the absolute unqualified right in its own discretion to accept or reject any application for a loan tendered it by the Trust Company, and its discretion did not end when it accepted the application. It was thereafter to be the sole judge of the sufficiency of the papers and documents, legal or otherwise, and as to the legal sufficiency of the title as security to support the loan. To be "sole judge" means to come to a conclusion or reach an opinion alone, uncontrolled by others. It is certain from this that at the date of bankruptcy, the Insurance Company had not accepted or approved the sufficiency of the title of the security or the documents supporting the loan, therefore, the trustee had no legal right to compel the Insurance Company to accept the notes and it is not entitled to set-off.

It is a fair presumption from the record in this case that the purpose of the Insurance Company in accepting the notes tendered it by the trustee conditioned on it remitting cash was to use their purchase price as an offset.

Under the provisions of the Bankruptcy Act, § 68b, 11 U.S.C.A. § 108(b), a set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which was purchased by or transferred to him after the filing of the petition or within four months before such filing with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.

On the whole case, we are of the opinion the lower court was correct in denying the appellant relief and the decree is affirmed.