## In re FIELD HEATING & VENTILATING CO., Inc.

## NORTHBROOK HOMES, Inc. v. KLEIN.

### No. 10703.

United States Court of Appeals Seventh Circuit.

Jan. 22, 1953.

Arthur Chittick, Joseph J. Lelivelt, Louis Swidler, Chicago, Ill., for appellant.

Leonard M. Spira, Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Northbrook Homes, Inc., a creditor of Field Heating & Ventilating Company, bankrupt, filed a claim against the debtor estate for $3289 balance on an indebtedness

due it from the bankrupt, as it averred, for borrowed money in the sum of $11,000, reduced by set-off credits to that amount. The trustee in bankruptcy filed a counterclaim, in which he averred that the credits, by virtue of which claimant reduced its demand, had been obtained by means of payments made by the bankrupt under such circumstances as to amount to a preference, voidable under the provisions of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. Answering the counterclaim, claimant asserted that the credits did not amount to a preference but were in legal effect merely accomplishment of a mutual set-off under the provisions of Section 68(a) of the Bankruptcy Act, 11 U.S.C.A. § 108(a).

The referee in bankruptcy, to whom the proceeding had been referred, in disposing of the claim and counterclaim, found that $8800 paid claimant by the bankrupt represented a recoverable preference and entered judgment against claimant therefor. He allowed the claim for the balance of $3289.-40, only on condition that claimant repay to the trustee the amount of the judgment rendered against it. On review, the District Court approved and confirmed the findings and order of the referee. On appeal, claimant insists that the payments made effectuated only a legitimate application of mutual set-offs under Section 68(a) and did not constitute a voidable preference.

Claimant is engaged in constructing suburban dwellings. In 1949 Sherman, its president, and William Field, who had for sometime been engaged in installing heating plants in buildings, formed a separate corporation, later the bankrupt, which thereafter carried on the business of installing ventilating and heating systems for claimant and others. Sherman managed claimant and Field the bankrupt corporation, though both were financially interested in the latter. In 1950, Field's company, being in need of additional capital, borrowed from claimant $11,000, none of which was repaid until the transactions occurring in February, 1951, related hereafter. Claimant was from time to time, if not at all times, indebted to the bankrupt for installations in houses it built. In February, 1951, claimant owed the Field company $8782 on such accounts, and the latter still owed claimant $11,000.

On Friday, February 16, 1951, Sherman and Field conferred. Field asked Sherman to pay something on account. Sherman countered by demanding money from Field to apply on the $11,000. Field presented a bill of $4989 against claimant for construction work done for it. Sherman agreed to give the Field Company a check for this amount, provided that company would give claimant a check for $5000, to apply on the debt of $11,000 due claimant. The parties disagree somewhat as to the details of the transpiring events, but we think not vitally. It is clear that Sherman left with Field, claimant's check for $4989, with a request that mechanics liens waivers be ready for delivery to him on Monday, February 19, when he expected Field to deliver to him the latter's company check for $5000. On Monday, February 19, the two parties met again. At that time Field delivered to Sherman the waivers of liens which the latter had demanded as condition to the delivery of claimant's check for $4989 and his company's check for $5000 to apply on its debt due claimant. This check was post-dated February 21. By February 23, the transaction had been completed; claimant had delivered its check for $4989 to apply on its debt to Field's company; the latter had delivered its check to claimant for $5000 to apply upon its debt to claimant, and the two checks had found their way into the respective bank deposit accounts. The several debts had been reduced by the respective amounts.

On February 24, Sherman delivered to Field claimant's check for $3793 in payment of the balance then due from claimant on account of work done by the now bankrupt company for claimant. At the same time, Field delivered to claimant his company's check for $3800 to apply further upon its debt due claimant. Each of these two checks likewise found their way into the respective payees' bank deposit accounts.

At the time of these transactions, we shall assume, for the purpose of disposition,

without so deciding, that the bankrupt was insolvent and that claimant had reasonable cause to know of such insolvency. Such assumed facts are, in view of our conclusions, wholly immaterial, for if there was a valid set-off of mutual demands, insolvency is of no importance. Citizens' National Bank of Gastonia v. Lineberger, 4 Cir., 45 F.2d 522, 525; Fourth National Bank v. Smith, 8 Cir., 240 F. 19, 26; Drugan v. Crabtree, 4 Cir., 299 F. 115, 120; Jandrew v. Guaranty State Bank of Ovilla, 5 Cir., 294 F. 530, 531.

■ As we view the record, only one material issue is presented and that is whether the events related bring claimant within the protective provisions of Section 68(a), which provides that "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." We keep in mind that to justify set-off it is not necessary that the debts be of the same character; claims of different species may be set off, if they are mutual. A mechanic's or artisan's or other lien in favor of one party does not destroy the right. In re Rosenbaum Grain Corp., 7 Cir., 103 F.2d 656, 658, 659; In re Pottier & Stymus Co., 2 Cir., 262 F. 955, 956; In re Colwell Lead Co., D.C.N.Y., 241 F. 922, 925, 926; Hartford Accident & Indemnity Co. v. Coggin, 4 Cir., 78 F.2d 471, 474.

■ The yard-stick for determination of the right of set-off is whether the debts are mutual, i e. whether each owes the other. If such reciprocal demands exist, one may be set off against the other, no matter whether insolvency is present or whether the set-off is made before or after bankruptcy intervenes for, if the parties have not voluntarily effectuated a set-off prior to bankruptcy, it is the duty of the trustee to do so. Studley v. Boylston Nat. Bank, 229 U.S. 523, 529, 33 S.Ct. 806, 57 L.Ed. 1313; Drugan v. Crabtree, 4 Cir., 299 F. 115, 119; Jandrew v. Guaranty State Bank of Ovilla, 5 Cir., 294 F. 530,

531; Murray v. Corn Exchange Bank, D.C.N.Y., 31 F.2d 373, 374.

■ In February, 1951, claimant owed the bankrupt for construction work done for it by the latter; the bankrupt owed claimant for borrowed money. If either had brought suit, the other might have pleaded set-off. Instead of doing so, they exchanged checks. Neither took anything from the other's estate; neither added anything to the other's estate. Their trial balances of accounts payable and receivable recorded only a reduction of accounts payable in one instance and of accounts receivable in the other balancing each other. The net estate of each remained the same both before and after the checks were exchanged. Thus the essential element of a preference, i. e. something which diminishes the estate, National Bank of Newport v. National Herkimer County Bank, 225 U.S. 178, 184, 185, 32 S.Ct. 633, 56 L.Ed. 1042, is lacking. We can conceive of no more appropriate application of the doctrine of set-off than that presented here.[1] As a result claimant had a right to have allowed a claim for the balance due after the set-off. Prudential Insurance Company v. Nelson, 6 Cir., 101 F.2d 441, 443.

The trustee argues that to approve the set-off here is to permit claimant to recover more than its pro rata share of its debt as compared with other creditors. Such is always the result in true set-offs under the Bankruptcy Act. As the Supreme Court, in New York County Nat. Bank v. Massey, Trustee, 192 U.S. 138, 147, 24 S.Ct. 199, 201, 48 L.Ed. 380, said: "It is true that it [the deposit] creates a debt, which, if the creditor may set it off under § 68, amounts to permitting a creditor of that class to obtain more from the bankrupt's estate than creditors who are not in the same situation, and do not hold any debts of the bankrupt subject to set-off. But this does not, in our opinion, operate to enlarge the scope of the statute defining preferences so as to prevent set-off in cases coming within the terms of § 68a.

1. Of course the fact that $18 more was paid by the bankrupt than by claimant would result in a preferential payment of $18; there was a depletion of the bankrupt's estate in that amount.

If this argument were to prevail, it would, in cases of insolvency, defeat the right of set-off recognized and enforced in the law, as every creditor of the bankrupt holding a claim against the estate subject to reduction to the full amount of a debt due the bankrupt receives a preference in the fact that, to the extent of the set-off, he is paid in full." See also Cumberland Glass Manufacturing Company v. DeWitt, 237 U.S. 447, 455, 35 S.Ct. 636, 59 L.Ed. 1042; In re Pottier & Stymus Co., 2 Cir., 262 F. 955, 956; Fourth National Bank v. Smith, 8 Cir., 240 F. 19, 26; Citizens' National Bank of Gastonia v. Lineberger, 4 Cir., 45 F.2d 522, 525.

The trustee admitted in oral argument that if the parties had done nothing, the right of set-off would have remained in full force and effect when bankruptcy intervened. He seems to urge, however, that the claimant has in some way deprived itself of the right. The argument is confusing, for the undisputed fact is that reciprocal checks were merely exchanged without any effect whatsoever on the net estate of either. The Supreme Court, in Studley v. Boylston Nat. Bank, 229 U.S. 523, 528, 529, 33 S.Ct. 806, 808, 57 L.Ed. 1313 said: "If this set-off of mutual debts has been lawfully made by the parties before the petition is filed, there is no necessity of the trustee doing so. If it has not been done by the parties, then, under command of the statute, it must be done by the trustee. But there is nothing in [Section] 68a which prevents the parties from voluntarily doing, before the petition is filed, what the law itself requires to be done after proceedings in bankruptcy are instituted. * * * It cannot have been illegal for the parties on September 12, 20, 30, October 3 and 14, to do what the law would have required the trustee to do in stating the account after the petition was filed on December 16, 1910." See also Jandrew v. Guaranty State Bank of Ovilla, 5 Cir., 294 F. 530, 531; Drugan v. Crabtree, 4 Cir., 299 F. 115, 119, 120.

The trustee suggests that the difference in dates of the checks for $4989 and for $5000 prevents a set-off, as they did not bear the same date. But we think it clear that the events out of which these two checks emanated were part and parcel of one transaction covering the time from February 16 through the 19th, when the waivers were delivered and through the 23rd, when the entire matter was finally terminated.

Walker v. Wilkinson, 5 Cir., 296 F. 850 cited by the trustee, is wholly inapplicable to the facts here. There only one payment was made,—that by the debtor; and when the trustee sued to recover the payment, the court properly held that there were no mutual credits and debits, but a single preferential payment, and that, there being no right of set-off before bankruptcy, the Bankruptcy Act afforded none under such facts. Such a preferential payment diminishes the estate, for there is no exchange, —no set-off of demands.

The judgment against claimant on the counterclaim is reversed, except as to the sum of $18.00; as to that amount it is affirmed. The Court will allow claimant's claim for the balance due after allowing the set-off in accord with the announcements herein.