**Murray ROSOF, as Trustee in Bankruptcy of George A. Bell, Inc., Bankrupt, Plaintiff,**

v.

**Murray ROTH, doing business as Atlas Sheet Metal Works, Defendant.**

United States District Court
S. D. New York.
Oct. 9, 1957.

Irving J. Berman, New York City (A. Bernard King, New York City, of counsel), for plaintiff.

Chauncey H. Levy, New York City (Sydney Basil Levy, New York City, of counsel), for defendant.

LEVET, District Judge.

This is an action by the trustee in bankruptcy of George A. Bell, Inc. to recover the sum of $8,197.56, allegedly paid by the bankrupt corporation to the defendant at a time when the bankrupt corporation was insolvent and within four months before the filing of the petition in bankruptcy. The original complaint was couched in terms of an action at law to recover a preference under Section 60, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. b. The trustee was permitted at the trial to amend the complaint so as to include inter alia allegations to the effect that the defendant dominated the bankrupt corporation to the extent that they were one and the same; that although the defendant's wife was nominally a majority stockholder, the defendant was the true stockholder and his wife acted as his dummy; that as a means of facilitating withdrawal by the defendant of moneys from the bankrupt corporation, the defendant arbitrarily overcharged the bankrupt for work rendered, thereby creating a factitious liability; that the defendant caused the payment to himself of the $8,197.56 in question out of the bankrupt's funds and that this payment was in effect a capital withdrawal.

The case was tried before the court without a jury, and at the conclusion of the trial the case was taken under advisement pending the submission of briefs by the parties. The court having considered the pleadings, the testimony of the witnesses, exhibits, stipulations and briefs, makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

1. On May 10, 1950, George A. Bell, Inc. filed a petition in this court for relief under Chapter 11 of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and on July 8, 1950, it was adjudicated a bankrupt. The plaintiff, Murray Rosof, is the duly appointed and qualified trustee in bankruptcy for the said George A. Bell, Inc., bankrupt, and brings this suit in his capacity as trustee.

2. George A. Belsky is a mechanical engineer and was president of the bankrupt corporation. During the latter part of 1947 he had certain conversations with the defendant, Murray Roth, who is the owner of Atlas Sheet Metal Works, to the effect that they enter into the business of installing air conditioning systems. At that time the defendant Roth was subcontracting sheet metal work for heating, ventilating and air conditioning contractors. This new business venture contemplated their competing with the general or prime contractors for whom Roth performed work as a subconstractor. Roth was to take care of the financial aspects of the business and Belsky was to furnish the engineering ability.

3. Belsky and Roth went to the office of the latter's attorney and instructed him to form a corporation for the purpose of entering into the airconditioning business. George A. Bell, Inc. was incorporated under the laws of the State of New York on December 16, 1947, and its office was located at 215 East 37 Street, New York, N. Y.

4. The total capital investment in the corporation was $1,020.40. None of this money was supplied by Belsky. However, he received a salary of $125 per week.

5. Fifty-one shares of capital stock of George A. Bell, Inc. were issued in the name of Elsie Roth, the wife of Murray Roth, and 49 shares were issued in Belsky's name.

6. The stock certificate book and ledger were kept in Roth's office as was the bankrupt corporation's check book.

7. Roth's employees on Atlas' payroll kept the financial records of the bankrupt corporation and acted as its secretary. Among them at various times were Florence Solomon, Sylvia Katz and later Irving Klein. None of these people were paid by the bankrupt corporation. Irving Klein became the office manager of Atlas Sheet Metal Works in 1949, at which time he also commenced doing the bookkeeping for the bankrupt corporation. He continued to perform this work until the filing of the bankruptcy petition. In addition to his other duties, Klein, together with Belsky, countersigned the checks of the bankrupt corporation. Roth explained that his office manager's countersignature was required in addition to Belsky's signature on checks because "He [Belsky] always owed me too much money. I wanted to have something to make sure that eventually, if he gets money, that I should be able to get paid. I just wanted to know what was going on."

8. Belsky procured prime contracts for the bankrupt corporation and fixed the prices and terms therefor. He also designated the subcontractors and the compensation to be paid to them. However, all subcontracts that were in the line of work performed by Roth's firm were given to his firm by first requesting bids from other subcontractors and then giving the job to Atlas Sheet Metal Works at the lowest bid price.

9. Roth never received any salary or dividends from the bankrupt corporation, and while Belsky did receive a salary, he, too, never received any dividends since none was ever declared.

10. Although Roth testified that he never loaned money to the bankrupt corporation, it appears that on April 30, 1948, a loan was made to the bankrupt corporation by Atlas Sheet Metal Works in the sum of $2,300 at a time when checks for more than $2,000 issued by the bankrupt corporation would have been dishonored if it were not for this loan, which was repaid in July, 1948. On August 2, 1949, Roth borrowed $3,000 from the bankrupt corporation, which he thereafter repaid.

11. Belsky testified that with respect to certain work which Roth had contracted to perform for the bankrupt corporation, namely, the "Temple Israel job," the bankrupt corporation was billed for $21,427.23, whereas the original oral contract price was between $12,000 and $13,000. However, the $21,427.23 figure included extras in the sum of at least $1,000 not contemplated as part of the original contract price. In addition, the bankrupt corporation received a credit in the sum of $4,833 against the amount owing on the "Temple Israel job."

12. In February or May, 1950, certain corporate records were altered. The entries on the stubs of stock certificates No. 1 and No. 2 were obliterated so that instead of reflecting 51 shares issued to Elsie Roth and 49 shares issued to George A. Belsky, a new certificate, No. 3, was prepared showing 100 shares issued to Belsky in 1948.

13. The trustee was apprised of substantially all of the foregoing facts in 1950, when he acquired possession of the bankrupt's records and conducted examinations of Belsky and the defendant.

14. According to the books of the bankrupt corporation, on March 30, 1950, it was indebted to the defendant in excess of $17,500 and the defendant was indebted to the bankrupt corporation in the sum of $8,197.56. The bankrupt issued its check to the defendant for $8,197.56, which cleared the bankrupt's account on March 31, 1950. On March 30, 1950, the defendant issued his check to the bankrupt corporation for $8,197.56, which cleared the defendant's account on March 31, 1950.

15. At the time of the above-mentioned transaction, the bankrupt corporation was insolvent to the extent of $14,536.75.

16. At the time of the above-mentioned transaction, the legitimate indebtedness of the bankrupt corporation to the defendant exceeded $8,197.56.

17. At the time of the transaction in question, the defendant was not a stockholder, director or officer of the bankrupt corporation.

18. At the time of the transaction in question, no fiduciary relationship existed between the defendant and the bankrupt corporation or its creditors.

19. The plaintiff has failed to prove that the transaction in question was the product of actual or constructive fraud on the part of the defendant.

20. The plaintiff has failed to prove that at the time of the transaction in question, defendant so dominated the bankrupt corporation that the latter was defendant's alter ego.

### Discussion

The pleadings, as amended, contain two separate causes of action: The first is to recover the sum of $8,197.56 on the ground that the defendant received a preference in said amount which is voidable under Section 60, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. b; the second is to recover the aforementioned sum on the ground that the bankrupt fraudulently transferred said amount to the defendant in violation of Section 70, sub. e of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e.

With respect to the first cause of action predicated on the alleged preference, the defendant contends that the exchange of checks between the bankrupt and himself was permissible as a set-off of mutual debts. It is clear beyond dispute that the defendant performed work and supplied materials in connection with the bankrupt's contracts and that at the

time of the assailed preference the bankrupt was indebted to the defendant in the sum of $8,197.56. In view of the foregoing facts, the doctrine of set-off is applicable to the transaction in question.

The case of In re Field Heating & Ventilating Co., Inc., 7 Cir., 1953, 201 F. 2d 316, 318, is pertinent. The facts and holding in the aforesaid case appear from the following excerpt from the opinion:

"In February, 1951, claimant owed the bankrupt for construction work done for it by the latter; the bankrupt owed claimant for borrowed money. If either had brought suit, the other might have pleaded set-off. instead of doing so, they exchanged checks. Neither took anything from the other's estate; neither added anything to the other's estate. Their trial balances of accounts payable and receivable recorded only a reduction of accounts payable in one instance and of accounts receivable in the other balancing each other. The net estate of each remained the same both before and after the checks were exchanged. Thus the essential element of a preference, *i. e.* something which diminishes the estate, National Bank of Newport v. National Herkimer County Bank, 225 U.S. 178, 184, 185, 32 S.Ct. 633, 56 L.Ed. 1042, is lacking. We can conceive of no more appropriate application of the doctrine of set-off than that presented here. As a result claimant had a right to have allowed a claim for the balance due after the set-off. Prudential Insurance Company v. Nelson, 6 Cir., 101 F.2d 441, 443.

"The trustee argues that to approve the set-off here is to permit claimant to recover more than its pro rata share of its debt as compared with other creditors. Such is always the result in true set-offs under the Bankruptcy Act. As the Supreme Court, in New York County Nat. Bank v. Massey, Trustee, 192 U.S. 138, 147, 24 S.Ct. 199, 201, 48 L.Ed. 380, said: 'It is true that it [the deposit] creates a debt, which, if the creditor may set it off under § 68 [11 U.S.C.A. § 108], amounts to permitting a creditor of that class to obtain more from the bankrupt's estate than creditors who are not in the same situation, and do not hold any debts of the bankrupt subject to set-off. But this does not, in our opinion, operate to enlarge the scope of the statute defining preferences so as to prevent set-off in cases coming within the terms of § 68a. If this argument were to prevail, it would, in cases of insolvency, defeat the right of set-off recognized and enforced in the law, as every creditor of the bankrupt holding a claim against the estate subject to reduction to the full amount of a debt due the bankrupt receives a preference in the fact that, to the extent of the set-off, he is paid in full.' See also Cumberland Glass Manufacturing Company v. DeWitt, 237 U.S. 447, 455, 35 S.Ct. 636, 59 L.Ed. 1042; In re Pottier & Stymus Co., 2 Cir., 262 F. 955, 956; Fourth National Bank v. Smith, 8 Cir., 240 F. 19, 26; Citizens' National Bank of Gastonia v. Lineberger, 4 Cir., 45 F.2d 522, 525." 201 F.2d at pages 318–319.

The right of set-off is recognized under Section 68, sub. a of the Bankruptcy Act wherein "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." That the right of set-off may be exercised prior to the filing of the bankruptcy petition was expressly stated by the Supreme Court in Studley v. Boylston National Bank, 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313, as follows:

" * * * If this set-off of mutual debts has been lawfully made by the parties before the petition is filed, there is no necessity of the trustee doing so. If it has not been done by the parties, then, under

command of the statute, it must be done by the trustee. But there is nothing in 68a which prevents the parties from voluntarily doing, before the petition is filed, what the law itself requires to be done after proceedings in bankruptcy are instituted." 229 U.S. at pages 528–529, 33 S.Ct. at page 808.

The alleged fraudulent conduct on the part of the defendant and the asserted alter ego relationship between the defendant and the bankrupt are significant only with respect to the alleged fraudulent transfer which forms the basis for the second cause of action. These facts are not necessary in an action to recover a preference. The distinction between preferences and fraudulent conveyances or transfers was graphically stated as follows in Vol. 3, Collier on Bankruptcy, ¶ 60.03 at pages 759–760:

> " * * * To be sure, a transfer may be both preferential and fraudulent in nature; thus if a preferential payment were held upon a secret trust for the debtor, it might be converted into a fraudulent transfer. There are, however, certain clear distinctions between the two types of prohibited transactions which should be borne in mind constantly. First of all, it must be remembered that aside from legislative restrictions, either state or federal, a preference may be a perfectly valid and legitimate business transaction. On the other hand, a fraudulent conveyance or transfer, even aside from statutory interdiction, is almost always invalid. There is no element of moral turpitude connected with the giving of a mere preference; this is partly illustrated by the fact that a transfer of property with actual intent to hinder, delay, or defraud creditors will prevent a discharge, whereas a preference will not."

Consequently, the doctine of set-off is a valid defense to plaintiff's first cause of action.

The second cause of action, concerning the alleged fraudulent transfer, is brought under Section 70, sub. e of the Bankruptcy Act, which declares that "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor." The term "Federal * * * law" as used in the aforesaid section refers to some federal statutory law other than the Bankruptcy Act. See Vol. 4, Collier on Bankruptcy, ¶ 70.89, page 1472. Since it does not appear that any other federal statute is applicable to the facts in the instant case, and since Section 70, sub. e does not create in a trustee any independent right or power of action with which to challenge an allegedly fraudulent transfer (Vol. 4, Collier on Bankruptcy, ¶ 70.90, page 1475), it becomes necessary to look to the applicable state law, namely, Article 10 of the New York State Debtor and Creditor Law, McKinney's Consol.Laws, c. 12.

Since the bankrupt was legitimately indebted to the defendant in the sum of $8,197.56 at the time of the exchange of checks, Sections 273, 274 and 275 of the Debtor and Creditor Law are inapplicable because they concern situations where the transferor fails to receive fair consideration in return. Consequently, the only relevant section of said law is Section 276, which provides as follows:

> "§ 276 Conveyance made with intent to defraud
>
> "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

However, this section is of no value to plaintiff since he has failed to prove that

the transaction at issue was the product of actual fraud, express or implied, on the part of the defendant.

The trustee's contention that he is entitled to relief for constructive fraud arising out of defendant's alleged breach of a fiduciary duty owing to the bankrupt corporation is without merit. The trustee has failed to establish that at the time of the transaction in question the defendant was a stockholder, director or officer of the bankrupt corporation or that he occupied any other position with respect to the bankrupt corporation from which a fiduciary duty might be implied.

Since the proof adduced by the trustee is insufficient to establish that the transaction in question resulted from any fraudulent conduct or breach of fiduciary duty on the part of the defendant, and since there is a similar insufficiency of proof in regard to the alleged alter ego relationship between the defendant and the bankrupt corporation, it becomes unnecessary to consider whether the trustee's second cause of action would be barred by a six-year statute of limitations. New York Civil Practice Act, § 48(5).

### Conclusions of Law

1. The court has jurisdiction of the subject matter of this suit and of the parties hereto.

2. The doctrine of set-off is a valid defense to the plaintiff's cause of action wherein he seeks to recover for an alleged voidable preference within the meaning of Section 60, sub. b of the Bankruptcy Act.

3. Plaintiff's cause of action under Section 70, sub. e of the Bankruptcy Act arising out of an alleged fraudulent transfer of moneys should be dismissed since it has not been proven that the said transfer was fraudulent or voidable under any Federal or State law applicable thereto.

4. The defendant is entitled to a judgment with costs dismissing the complaint in this action.