**Murray ROSOF, as Trustee in Bankruptcy of George A. Bell, Inc., Bankrupt, Plaintiff-Appellant,**

v.

**Murray ROTH, doing business as Atlas Sheet Metal Works, Defendant-Appellee.**

**No. 52, Docket 24939.**

United States Court of Appeals Second Circuit.

Argued Nov. 12, 1958.

Decided Jan. 12, 1959.

**830**

A. Bernard King, New York City, (Irving J. Berman, New York City, on the brief), for plaintiff-appellant.

Sydney Basil Levy, New York City, (Chauncey H. Levy, and Sydney Basil Levy, New York City, on the brief), for defendant-appellee.

Before HINCKS, LUMBARD and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Plaintiff, as the trustee in bankruptcy of George A. Bell, Inc., appeals from a judgment dismissing the complaint in an action brought by him to recover $8,-197.56 from defendant. The original complaint alleged in substance that defendant, having reasonable cause to believe the bankrupt insolvent, had received a preferential payment (March 30, 1950) at a time when the bankrupt was insolvent and within four months of the filing of the petition (May 10, 1950). Upon the trial and after plaintiff had rested he sought leave to amend his complaint by alleging domination of the bankrupt by defendant; that the bankrupt was defendant's *alter ego*; that defendant was the true stockholder, his wife acting only as a "dummy"; that defendant overcharged the bankrupt for work performed; and that defendant's payment to himself was in effect a capital withdrawal.

In the latter part of 1947, defendant, who was in the business of subcontracting sheet metal work for heating and air conditioning contractors, and George A. Belsky, a mechanical engineer, formed a corporation to engage in the same type of business handled by defendant's prime contractors. Defendant's attorney drew the necessary papers, defendant supplied the capital, $1,020.40, and one hundred shares of stock were issued (fifty-one shares to Elsie Roth, defendant's wife, and forty-nine shares to Belsky). Employees in defendant's office kept the books and Belsky and defendant's office manager countersigned the checks.

Belsky was the president and received a salary. He procured the contracts, fixed the prices and terms, and was in charge of the bankrupt's engineering operations. Various subcontracts were awarded by the bankrupt to defendant with the result that the credit and debit balances between it and defendant fluctuated. After a period in which defendant was indebted to the bankrupt in an amount in excess of the bankrupt's obligations to him, the situation reversed itself and from September 1949 on the bankrupt's debt to defendant exceeded defendant's debt to it.

On March 30, 1950 the bankrupt, according to its books, owed defendant more than $17,500 and defendant owed the bankrupt $8,197.56. Two checks were drawn, each in the amount of $8,-197.56, dated March 30, 1950, one from the bankrupt to defendant, the other from defendant to the bankrupt. The check from defendant liquidated his debt to the bankrupt, the check from the bankrupt reduced its debt to some $9,-300. At this time the bankrupt was insolvent to the extent of $14,536.75. Shortly thereafter (May 10, 1950) George A. Bell, Inc. filed its petition in bankruptcy.

The trial court, amply supported by the proof, held that "[I]t is clear beyond dispute that the defendant performed work and supplied materials in connection with the bankrupt's contracts * * * " and that the bankrupt was actually indebted to defendant for $8,-197.56. As a matter of law the doctrine of set-off applies. The fact that, the right was exercised prior to the filing of the petition is immaterial. Section 68, sub. a of the Bankruptcy Act (11 U.S. C.A. § 108, sub. a) grants this right and "there is nothing in 68(a) which pre-

vents the parties from voluntarily doing, before the petition is filed, what the law itself requires to be done after proceedings in bankruptcy are instituted" (Studley v. Boylston National Bank, 1913, 229 U.S. 523, 528–529, 33 S.Ct. 806, 808, 57 L.Ed. 1313).

■ Where, as here, there is no diminution of the bankrupt's estate by the payment, the essential element of a preference is lacking (National Bank of Newport v. National Herkimer County Bank, 1912, 225 U.S. 178, 184, 185, 32 S.Ct. 633, 56 L.Ed. 1042; In re Field Heating & Ventilating Co., Inc., 7 Cir., 1953, 201 F.2d 316). On March 30, 1950 the books of the bankrupt showed a net obligation to defendant of approximately $9,300. This situation was not changed by the check payments. There was no diminution of the bankrupt's assets thereby.

Appellant seeks to avoid the set-off doctrine by arguing that defendant's close relationship to the bankrupt excludes him from its benefits. He claims that the indebtedness should be regarded as defendant's capital investment in the bankrupt, and points to the small capital contribution by defendant of $1,020.40 upon the incorporation.

■ There are, of course, many cases in which purported loans to corporations have been placed by the courts in the category of capital contributions, particularly where the lender is presumed to know that the advance carries with it both great risk and the possibilities of substantial rewards. Such situations are frequently found in the income tax field where bad debt deductions are taken for the loss of such advances. Here, however, the obligation to defendant arose out of work, labor, services and materials furnished by defendant and was incurred in the regular course of business between the two companies. Considering the circumstances under which the obligation was created, the "capital investment" theory relied upon by appellant cannot be applied to the facts here.

Following appellant's argument further and assuming that the stock in the name of defendant's wife were his in fact, defendant and Belsky would constitute the corporation. This is not enough to change the picture because there was no proof that defendant was in charge of the bankrupt's operations; to the contrary it was Belsky.

In 1950 the stock certificate and minute books of the bankrupt were tampered with and altered to show the entire stock issued to Belsky as of January 2, 1948. Highly suspicious as such practices always are, the facts were fully developed before the trial court. The changes made do not bear upon the pertinent issues, which are the good faith of the business transactions creating the indebtedness and the legal right to the set-off.

■ The well-known cases, urged as determinative by appellant (Consolidated Rock Products Co. v. DuBois, 1941, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982; Pepper v. Litton, 1939, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; Taylor v. Standard Gas & Electric Co., 1939, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669; Securities and Exchange Comm. v. Liberty Baking Co., 2 Cir., 1957, 240 F.2d 511, certiorari denied 353 U.S. 930, 77 S.Ct. 719, 1 L.Ed.2d 723) are not helpful in arriving at the correct decision here. Where resort is to be had to the broad powers of a court of equity, each case must be decided upon its own peculiar facts. The trial judge heard and saw many witnesses through whom appellant had an opportunity to develop his facts and theories. From their testimony the court concluded that appellant had not established the necessary background for the application of the principles enunciated in the cases cited. This conclusion is supported by the evidence.

■ Viewing the cause of action, as amended, in the light of section 70, sub. e of the Bankruptcy Act (11 U.S.C.A. § 110, sub. e) and section 276 of the New York Debtor and Creditor Law, McKin-

ney's Consol.Laws, c. 12, plaintiff has still failed to establish a case thereunder. Section 276 provides in part that "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." The law, thus, requires proof of "actual intent" that the issuance of the $8,197.56 check was "to hinder, delay or defraud either present or future creditors." The trial court's conclusion that appellant failed to prove that the "transfer (payment of the $8,197.56) was fraudulent or voidable under any Federal or State law applicable thereto" is supported by the record.

The judgment is affirmed.

LUMBARD, Circuit Judge (concurring).

I concur in the result reached by the court but I do not think it necessary to examine the degree of control that the defendant exercised over the bankrupt corporation, which control in any event was considerable.

Appellant has not shown that the degree of control that he claims Roth exercised over the corporation provided Roth with any advantage with respect to the exercise of the set-off, and hence the issue of control is irrelevant here.

It is sufficient in this case to hold: (1) that as the bankrupt's indebtedness to defendant Roth concededly arose out of services and materials furnished by Roth, Roth was a creditor of the bankrupt and therefore in making the set-off did only what any other creditor with a similar balance of debts and credits could do under § 68, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 108, sub. a; and (2) that the appellant has not shown that the wash of checks affected the corporation's net financial position or prejudiced the bankrupt's creditors other than as § 68 contemplates and permits.