## STUDLEY, TRUSTEE IN BANKRUPTCY OF COLL-VER TOURS COMPANY v. BOYLSTON NA-TIONAL BANK.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 899.   Argued April 14, 1913.—Decided June 9, 1913.

Nothing in the Bankruptcy Act deprives a bank with which the insolvent is doing business of the rights of any other creditor taking money without reasonable cause to believe that a preference will result.

In this case it having been found that the deposits and payments of notes were not made to enable the bank to secure a preference by the right of set-off, the bank had a right under its agreement to set off the deposits against the notes within four months of the bankruptcy. *New York County Bank* v. *Massey*, 192 U. S. 138.

Section 68a of the Bankruptcy Act did not create the right of set-off but recognized its existence and provided a method for its enforcement even after bankruptcy.

The right of set-off is recognized by the Bankruptcy Act and it cannot be taken away by construction because of possibility of its abuse; nor will the act be so construed by denying such right as to make banks hesitate to carry on business and thus produce evils of serious consequence.

200 Fed. Rep. 249, affirmed.

THE facts, which involve the right of a bank to accept in good faith payments from an insolvent, are stated in the opinion.

*Mr. J. Butler Studley*, with whom *Mr. William H. Dunbar* and *Mr. Stewart C. Woodworth* were on the brief, for appellant.

*Mr. Hollis R. Bailey* for appellee.

MR. JUSTICE LAMAR delivered the opinion of the court.

The Collver Tours Company was engaged in the business of conducting touring parties around the world, charging

a lump sum for the tickets, which were paid for in advance. It had expended about $40,000 in advertising, which it carried on its books as an asset, and since the character of its business did not involve the possession of tangible property, it had nothing except cash on hand, good-will and its earning capacity as a means of paying debts.

In 1907 the company opened an account with the Boylston National Bank, with which it subsequently did all of its banking business of depositing, checking and borrowing. It notified the Bank in 1909 that it had no other liabilities except what was due to the Bank, and it was given a line of credit of $25,000. It borrowed that sum on the promise to repay it that year, but as it used a part of its funds to open a Letter-of-Credit Account in the Bank, it was permitted to renew the notes. In December, 1909, it made a statement to the Massachusetts Corporation Commission which showed that the company did not have assets sufficient to pay its liabilities, and an officer of the Bank saw this statement, but the representative of the Collver Company went over the matter with the bank officers, made an explanation and borrowed an additional sum of $5,000 in the spring or summer of 1910. During the year 1910 the debt of $25,000 was reduced to $10,000, went back to $25,000, was reduced again to $15,000 and increased to $30,000—the Collver Company making to the Bank encouraging statements of its prospects and of an anticipated large sale of tickets for round-the-world tours. One note for $5,000 was paid and the then debt of $25,000 was represented by five notes for $5,000 each, maturing Sept. 12, 20, 30, Oct. 3 and 14th.

The balances in bank to the credit of the Collver Company fluctuated greatly from time to time, varying from almost nothing up to as high as $54,000. As a result of sales of tickets, the company deposited large sums in August and September and smaller sums in October and November. During that period $22,500 was paid to the

Bank, the three notes due September 12, 20 and 30 being paid by checks on the Boylston National Bank. The note for $5,000 due Oct. 3, was charged to the Company's account and on the same day a renewal note for $2,500 was discounted. The note for $5,000 which fell due on October 14 was also charged to the deposit account according to the custom of the Bank, of which the Collver Company had notice and to which it assented. On the date of the payment by such charging of the last note to the account the Company had $19,000 left to its credit. The Collver Company continued to make deposits and to draw checks, and applied for a new loan, which was refused by the Bank. On Dec. 16, 1910, a petition in bankruptcy was filed against the Company and after his election the Trustee brought suit against the Bank to recover the $22,500, claiming that it had notice of the Collver Company's insolvency and that the payments of $22,500 were transfers which had operated to give the Boylston Bank a preference within four months of filing the petition.

In its answer the Bank alleged that it was informed and believed that the Company was doing a large and constantly increasing business and was in every way responsible; that the Company for a long time kept its general deposit with the Bank and was constantly making deposits therein, some large, some small, upon all of which the Bank had a lien and a right of set-off and that "this right of set-off was not affected by the fact, if it be a fact, that the Company was at any of the times of the exercise of said right of set-off, insolvent;" and it claimed that the exercise of its right of set-off did not and could not constitute a preference within the meaning of the Bankruptcy Act or any amendment thereto.

The case was tried by the Referee, who sustained the Bank's claim of set-off, holding that the payments were not transfers; or,—if transfers—that the Trustee could not

recover the money because the bank had no reasonable
cause to believe that the payment of the notes would
operate as a preference. On exceptions to the report it
was sustained on the ground that the deposits had been
honestly made in due course of business and that the
defendant, by virtue of its banker's lien and right of
set-off, could retain the money. That judgment was
affirmed on the same ground by the Circuit Court of Ap-
peals. (200 Fed. Rep. 249.) The case was then brought
here by the Trustee, who insists that all the payments were
transfers;—that if the notes charged to the account are
not transfers certainly the giving of the three checks for
$5,000 were transfers and that in receiving the same
the Bank necessarily knew that it was obtaining a pref-
erence.

But if, as found by the Referee, the Bank had no reason-
able cause to believe such transfers would effect a pref-
erence, the payments by checks for $15,000 drawn on the
deposit account, are as much protected as if on the same
dates similar checks had been given in payment of like
amounts due another bank with which the Collver Com-
pany kept no account. For there is nothing in the statute
which deprives a bank, with whom an insolvent is doing
business, of the rights of any other creditor taking money
without reasonable cause to believe that a preference will
result from the payment. The Bankruptcy Act contem-
plates that by remaining in business and at work an in-
solvent may become able to pay off his debts. It does not
prevent him from continuing in trade, depositing money
in bank, drawing checks and paying debts as they mature,
either to his own bank or any other creditor. It does pro-
vide, however, that if bankruptcy ensues all payments
thus made, within the four months period, may be recov-
ered by the Trustee, if the creditor had reasonable cause
to believe that a preference would be thereby effected.

In this case the Referee found as a fact that the Bank

had no reasonable cause to believe that a preference would result. The District Judge made no finding of fact, though in his opinion, which cannot be considered as a finding of fact, he did state that the Bank had a right to examine the company's books and could have discovered that a preference would result. The Circuit Court of. Appeals made no ruling on this subject, and we, therefore, pass to the consideration of the right of set-off in the light of the finding by the Referee, by the District Judge, and by the Court of Appeals that the deposits were honestly made in due course of business and without any intent to prefer the Bank.

The money so deposited was the proceeds of the sale of tickets to a large party of round-the-world tourists and was put in bank, not for the purpose of preferring it, but in the expectation of being used for carrying on the business in the future as in the past. Indeed, the payments were made with the statement that the company would expect the Bank to discount other notes. We find nothing in the record to indicate that the deposits were made for the purpose of enabling the Bank to secure a preference by the exercise of the right of set-off. The case, therefore, comes directly within the decision in *New York County National Bank* v. *Massey*, 192 U. S. 138, where $3,884 deposited by an insolvent customer, in good faith, four days before the filing of the petition against him was allowed to the Bank by way of set-off on notes of the bankrupt held by it.

An effort is made to distinguish that case from this, by calling attention to the fact that here, by checks drawn on the account or notes charged to the account, the parties themselves voluntarily made the set-off before the petition was filed,—while in the *Massey Case* the Trustee, under the supervision of the Referee stated an account and allowed the set-off as permitted by § 68a, which provides "that in all cases of mutual debts, or mutual credits be-

tween the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

That section did not create the right of set-off but recognized its existence and provided a method by which it could be enforced even after bankruptcy. What the old books called a right of stoppage—what business men call set-off, is a right given or recognized by the commercial law of each of the States and is protected by the Bankruptcy Act if the petition is filed before the parties have themselves given checks, charged notes, made book entries, or stated an account whereby the smaller obligation is applied on the larger.

The banker's lien on deposits, the right of retention and set-off of mutual debts are frequently spoken of as though they were synonymous, while in strictness, a set-off is a counterclaim which the defendant may interpose by way of cross-action against the plaintiff. But, broadly speaking, it represents the right which one party has against another to use his claim in full or partial satisfaction of what he owes to the other. That right is constantly exercised by business men in making book entries whereby one mutual debt is applied against another. If the parties have not voluntarily made the entries and suit is brought by one against the other, the defendant, to avoid a circuity of action, may interpose his mutual claim by way of defense and if it exceeds that of the plaintiff, may recover for the difference. Such counterclaims can be asserted as a defense or by the voluntary act of the parties, because it is grounded on the absurdity of making A pay B when B owes A. If this set-off of mutual debts has been lawfully made by the parties before the petition is filed, there is no necessity of the Trustee doing so. If it has not been done by the parties, then, under command of the statute, it must be done by the Trustee. But there is nothing in § 68a which prevents the parties from volunta-

rily doing, before the petition is filed, what the law itself requires to be done after proceedings in bankruptcy are instituted.

The Bank was indebted to the Collver Company as a depositor some $54,000 for money deposited in good faith in the usual course of business and with no purpose of enabling the Bank to secure the right of set-off. The Collver Company, on the other hand, was indebted to the Bank $25,000 on notes maturing at various dates. These were mutual debts, and if on the date the first note became due, the Collver Company had failed to pay it, the Bank could have enforced its banker's lien or its right of set-off, by applying $5,000 of the deposits in payment of the note which matured that day, and so on as each of the other notes became due. It cannot have been illegal for the parties on September 12, 20, 30, October 3 and 14 to do what the law would have required the Trustee to do in stating the account after the petition was filed on December 16, 1910. No money passed in either instance; for, whether the checks for $5,000 were paid or notes for $5,000 were charged, was, in either event, a book entry equivalent to the voluntary exercise by the parties of the right of set-off.

The Bankruptcy Act recognizes this right and it cannot be taken away by construction because of the possibility that it may be abused. The remedy against that evil is found in the fact that the Trustee is authorized to sue and recover if it is shown that after insolvency the money was deposited for the purpose of enabling a bank or other creditor to secure a preference. But to deny the right of set-off, in cases like this, would in many cases make banks hesitate to honor checks given to third persons, would precipitate bankruptcy and so interfere with the course of business as to produce evils of serious and far-reaching consequence.

*Affirmed.*