## KOLKMAN v. MANUFACTURERS' TRUST CO.

District Court, S. D. New York.   October 3, 1927.

I. Bankruptcy ⇐166(3)—Bank held not liable for repayment of amount received from corporation in payment of notes, without knowledge that corporation was insolvent (Stock Corporation Law N. Y. § 15).

An insolvent corporation sold bills receivable and from the proceeds credited to its account paid notes it owed the bank and which would have matured a few days later. The transaction was in the usual course of business of the bank, which had no knowledge of the insolvency of its depositor. Held, that the payment was not recoverable from the bank by the trustee in bankruptcy of the corporation, under Stock Corporation Law N. Y. § 15, making void payments by insolvent corporation with intent to prefer creditor.

**2. Bankruptcy ⟨key⟩164—Bank may receive depositor's check in payment of depositor's notes, though depositor is insolvent.**

Bank having right to set off notes of depositor against deposit may lawfully receive depositor's check in payment of notes, though depositor is insolvent.

In Equity. Suit by John H. Kolkman, trustee in bankruptcy of the Kewa Novelty Company, Inc., against the Manufacturers' Trust Company. Decree for defendant.

Shaine & Weinrib, of New York City (George C. Levin, of New York City, of counsel), for plaintiff.

Jonas & Neuburger, of New York City, for defendant.

HUTCHESON, District Judge. This is an action by the trustee in bankruptcy to recover $5,000 paid to the defendant on December 10, 1924, five days before the filing of a petition in bankruptcy against the Kewa Novelty Co., Inc., a New York corporation. The payment was made by check signed by two officers of the bankrupt corporation, William Kunstler, president, and I. G. Altman, treasurer; these two officers being also indorsers on the paper.

The petition in bankruptcy was filed December 15, 1924. The trustee in the bill of complaint states two causes of action; the first predicated upon section 60b of the National Bankruptcy Act (11 USCA § 96), and the second upon section 15 of the Stock Corporation Law of the state of New York, formerly section 66.

At the conclusion of the trial the trustee conceded that the essential element of the cause of action under section 60b, knowledge of the bank, was wanting, and dismissed this cause of action. The case stands for decision upon the second. The portion of the section invoked reads:

"Sec. 15. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent, or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid, except that laborers' wages for services shall be preferred claims and be entitled to payment before any other creditors out of the corporation assets in excess of valid prior liens or incumbrances * * * Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders or other trustees. * * * Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void. * * * No such conveyance, assignment or transfer shall be void in the hands of a purchaser for a valuable consideration without notice."

The evidence abundantly establishes, not only from the circumstances, but from the testimony of the president of the bankrupt corporation, that the corporation was insolvent at the time of the payment to the bank, that the president knew it was, and that he made the payment to the bank because, as he says, he thought it right to protect it, and a reasonable acquaintance with human nature leads one to believe he had the additional reason to protect himself on his indorsement.

[1] The facts as to the matter are that the corporation owing the trust company $5,000 on two notes of $2,500 each, maturing respectively December 18, 1924, and December 29, 1924, and indorsed by Kunstler and Altman as its officers, assigned accounts receivable, receiving $6,000 therefor. This money was deposited to the credit of the corporation, and thereafter, by a check signed by the two officers, the notes due the bank were taken up and delivered to the corporation.

I find, from the admissions of the plaintiff trustee in dismissing his cause of action under section 60b and from the facts themselves, that the checks were given without any solicitation on the part of the bank; the bank acting in perfect good faith and having no knowledge of financial difficulties on the part of the depositor. As far as the bank was concerned, the matter took place in the ordinary and usual course of business; it having on other occasions purchased bills receivable from the corporation, and having an established practice that its customers could take up notes before maturity, obtaining credit for the unearned interest.

While it is true that it is usual in law to state the relation of banker and depositor as that of debtor and creditor, and the legal principles governing persons in that category are usually applied as between banker and depositor, it is entirely evident that so importantly different in its commercial aspects is the relation of banker and depositor from that of the ordinary debtor and creditor, and of such vital importance is it to the interests of the business community that the utmost freedom of flow of credit be maintained between the bank and its customers, that, whenever unusual circumstances arise, it is and should be the practice of the courts to make the most liberal construction possible to maintain this situation.

As an instance in point, there is the body of decisions which has grown up around certificates of trust, under which the courts sustain and protect the relation, even where nec-

essary to run counter to the views established and applied between an ordinary debtor and creditor. See Old Colony Trust Co. v. Sugarland Industries (D. C.) 296 F. 129. See, also, Sexton v. Kessler, 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995, an analogous ruling. The same point of view dictated the decision in New York County National Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380, and Studley v. Boylston Bank, 229 U. S. 523, 33 S. Ct. 806, 57 L. Ed. 1313, in which the Supreme Court held that a bank and its depositor might, prior to bankruptcy, adjust their mutual accounts; that such adjustment would not be a preference, but a set-off.

Plaintiff, while conceding that, had the notes been due at the time the check was given, the trustee would have had no action, insists that a different rule applies where notes are taken up prior to maturity, citing on the point, among others, Fifth National Bank of City of New York v. Lyttle (C. C. A.) 250 F. 361. That case merely announces the general proposition that the bank cannot by offset deprive a depositor of the right to have his indebtedness run to the contract maturity date, and that where a transaction shows an intent to prefer, with knowledge on the part of the bank, a preference results, from which the bank cannot save itself by offset or otherwise.

[2] Here the bank is wholly innocent in the transaction, which occurred within the regular course of business, and the parties merely accomplished voluntarily what the law, under section 68a, would have done. While I believe that the Fifth National Bank, supra, Case was not correctly decided, and that it is not in line with the weight of authority (see Hanson v. Citizens' State Bank, 5 Am. Bankr. Rep. [N. S.] 579,[1] Supreme Court of Minnesota; Fourth National Bank v. Smith [C. C. A. 8th Circuit] 240 F. 19; Jandrew v. Guaranty State Bank [C. C. A.] 294 F. 530, 2 Am. Bankr. Rep. [N. S.] 253 [5th Circuit]), in so far as it is cited as holding that an offset cannot be effected by agreement before maturity, it has been determined in this circuit that it does not so hold (Wright v. Seaboard Steel Corporation [C. C. A.] 272 F. 810). And in so far as it is cited as determining that mere knowledge on the part of the bank of the insolvency of the debtor, and that a preference will be effected, defeats the transfer, I believe it has no controlling force here, because the bank is wholly innocent in this transaction, and the payment was made in the due and regular course of business.

[1] 161 Minn. 534, 201 N. W. 932.

I also agree with defendant on its other proposition. I think it plain that the bank is protected by the very terms of the statute itself as a bona fide purchaser, and that it will not do to institute an inquiry, with the refinements suggested by plaintiff, whether under the circumstances the indorsers, themselves being privy to the payment, were in fact released, and may still be held liable.

It is sufficient that the bank did release them in the due and regular course of business, and it ought not to be put, under these circumstances, to the doubtful outcome of a suit, to determine whether they are in fact still held. Perry v. Van Norden Trust Co., 192 N. Y. 189, 84 N. E. 804; Grandison v. Robertson (C. C. A.) 231 F. 785; Howland v. Metropolitan Bank (D. C.) 228 F. 542.

Finally, I think it must be held, as a matter of logic and common sense, that if the act applies, so as to strike the payment down as void, the transaction must be regarded as having never occurred, and the bank must be allowed the right of offset after bankruptcy conferred by the act; because it would be the height of unreason to say that the bank, innocent in the transaction, could take prejudice from an act which the statute denounces as invalid, and therefore as not having in fact occurred.

Upon all these considerations, I think it plain the plaintiff's suit must fail; and it will be so ordered.