SAMS *v.* FIRST NAT. BANK OF MERIDIAN.

(Division A. May 23, 1938. Suggestion of Error Overruled August 27, 1938.)

[181 So. 320. No. 33219.]

Lyle V. Corey, of Meridian, for appellant.

Chambers & Trenholm, of Jackson, for appellant.

**Neville & Minniece,** of Meridian, for appellee.

Argued orally by **Lyle V. Corey** and **E. L. Trenholm,** for appellant, and by **Geo. B. Neville,** for appellee.

**McGehee, J.,** delivered the opinion of the court.

As trustee in bankruptcy of the estate of Simon K. Watson, formerly doing business as Klein's Family

Shoe Store, at Meridian, Miss., the appellant filed his bill of complaint against the appellee, First National Bank, Meridian, Miss., to recover as a voidable preference, under section 60b of the Act of Bankruptcy of 1898, as amended 11 U. S. C. A. section 96(b), the sum of $2,382.88; also, any further sums that might be shown by a discovery to have been paid such bank by the bankrupt within the period of four months prior to the adjudication in bankruptcy on January 8, 1936. Upon the final hearing of the cause the chancellor found in his decree that the bankrupt made certain transfers of money to the bank on the 10th day of September, 1935, and on other dates thereafter, until and including the 4th day of January, 1936; that the bankrupt was insolvent at the time each of the transfers was made; that the bank, in receiving such transfers of money, had reasonable cause to believe that the bankrupt was insolvent on said dates; but further found that, inasmuch as each of the said transfers of money was made by check drawn on the account of the bankrupt with such bank, made up of deposits "made in the usual course of business, and not with intent to prefer the bank as a creditor," the bank was only exercising its legal right of off-set, and these transfers did not constitute voidable preferences except as to a payment made of $102 in cash on January 4, 1936, after the account at the bank had been closed, and for which latter amount a decree was rendered against the bank in favor of the appellant. From the adverse portion of this decree the appellant appeals, and the appellee bank prosecutes a cross-appeal.

Section 60b of the Act of Bankruptcy of 1898, as amended in 1910, 11 U. S. C. A. section 96(b), provides in part as follows:

"If a bankrupt shall . . . have made a transfer of any of his property, and if, at the time of the transfer . . . and being within four months before the filing of the petition in bankruptcy . . . the bankrupt be insolvent and the . . . transfer then operate as a

preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such . . . transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person.''

It will thus be seen that it is not necessary, in order to constitute a voidable preference under the Act of Bankruptcy as amended, that the bankrupt shall intend to prefer the person receiving, or to be benefited by, the transfer. It is only necessary that he be then insolvent, and that the transferee shall have good cause to believe that the enforcement of the transfer would, in fact, effect a preference. The change in the wording of the statute, 30 Stat. 562, section 60b, from ''reasonable cause to believe that it was intended thereby to give a preference,'' to ''reasonable cause to believe that the enforcement of . . . [the] transfer would effect a preference,'' 11 U. S. C. A. section 96(b), is significant. What constitutes ''reasonable cause to believe'' depends on the facts and circumstances of each particular case. Actual knowledge or belief is not necessary; it is sufficient if there is knowledge or notice of facts or circumstances such as would lead a person of reasonable prudence to believe that the debtor is insolvent, or as would put a person of ordinary caution, or of reasonable prudence, on inquiry which would lead to knowledge of insolvency. This view is fully sustained in the recently published Corpus Juris Secundum, vol. 8, on the subject of Bankruptcy, pp. 705-719, section 215, inclusive, which is in accord with the other texts and the decisions of the courts on this question.

The finding of the chancellor as to the insolvency of the bankrupt on the dates that the transfers of the money in question were made to the appellee bank within the prohibited period, and his finding that the bank had reasonable cause to believe that the bankrupt was insolvent on said dates, together with the fact that he

held one of such transfers of money to be a voidable preference within the meaning of the Act of Bankruptcy, on the ground alone that this one transfer was paid in cash, instead of by check on his bank account, at a time when the bank could not have exercised its legal right of set-off, was equivalent to a finding that the other transfers in question would likewise be voidable, except for the fact that the chancellor concluded, as a matter of law, that the bank, in receiving the transfers as payments on notes of the bankrupt held by the bank, was exercising its legal right of set-off on account of the fact that the payments were made by check on his bank account. In his conclusion as to these transfers not being voidable on the ground thus stated, we think the chancellor was in error. Where all the other essential elements of a voidable preference are present, as in the case at bar, and checks are drawn by the bankrupt in favor of a bank on his funds deposited on the day the checks are given, in order to create a balance for that purpose, the right of set-off as to the funds so deposited does not exist. In Remington on Bankruptcy, vol. 4, section 1720, the rule is announced as follows:

"The correct test is the purpose and intent of the depositor in making the deposits on which the check is drawn, that is to say, if the deposits were not made in the usual course of business subject to withdrawal, but were made with the purpose of enabling the bank to exercise its right of offset, then the deposits were, in effect, indirect payments, and as such were preferential transfers."

In the case of Bank of California v. Brainard, 3 Cir., 3 F. (2d) 3, 5 A. B. R. (N. S.) 545, the bankrupt made a deposit of checks, and at the same time gave the defendant bank his check in payment of a note. Prior to making the deposit the bankrupt had a balance in his account of $5.74. The bank accepted the check in payment of the note, and when sued by the bankrupt's trustee relied upon the case of Studley v. Boylston National

Bank, 229 U. S. 523, 33 S. Ct. 806, 57 L. Ed. 1313, 30 A. B. R. 161, as authority for its contentions, as does the appellee here. The Circuit Court of Appeals, in holding that the transfer constituted a voidable preference, said (page 4):

"The deposit of checks on that date was obviously made for the purpose of paying the bankrupts' notes to the bank. It was in effect a transfer of the checks for that purpose. It was parting with so much of the bankrupts' assets to pay one of [his] debts, and it operated to diminish by that much the bankrupts' estate. . . . We find nothing in the cases cited by the plaintiff in error, such as Studley v. Boylston National Bank, 229 U. S. 523, 33 S. Ct. 806, 57 L. Ed. 1313, to sustain its contention that the right of offset exists under the facts presented in the present case. Those cases go no further than to hold that the Bankruptcy Law recognizes the right of set-off of mutual accounts between a bank and a depositor, and does not deprive the bank of the rights of any other creditor taking money without reasonable cause to believe that a preference will result. But here there were no mutual accounts. There was but a payment of a note to the bank, under circumstances which, if the bank had knowledge of the bankrupts' insolvency, made the payment preferential."

In the Studley Case, supra, the opinion of the court states that (page 808): "The bank was indebted to the Collver Company as a depositor some $54,000 for money deposited in good faith in the usual course of business, and with no purpose of enabling the bank to secure the right of set-off. The Collver Company, on the other hand, was indebted to the bank $25,000 on notes maturing at various dates. These were mutual debts, and if, on the date the first note became due, the Collver Company had failed to pay it, the bank could have enforced its banker's lien or its right of set-off, by applying $5,000 of the deposits in payment of the note which matured that day, and so on as each of the other notes be-

came due. It cannot have been illegal for the parties on September 12, 20, 30, October 3 and 14, to do what the law would have required the trustee to do in stating the account after the petition was filed on December 16, 1910. No money passed in either instance; for, whether the checks for $5,000 were paid or notes for $5,000 were charged was, in either event, a book entry equivalent to the voluntary exercise by the parties of the right of set-off.''

But it has been held that a bank is not relieved from liability to refund as a preference a payment received on notes from a bankrupt while insolvent, under such circumstances that it had reasonable grounds to believe that a preference would be effected, by the fact that the payment was made by a check on the debtor's deposit in the same bank, which, if it had remained until the debtor's bankruptcy, the bank might have retained as a set-off. Heyman v. Jersey City Third National Bank D. C., 216 F. 685; In re Starkweather & Albert, D. C., 206 F. 797; Ridge Avenue Bank v. Studheim, 3 Cir., 145 F. 798. However, in the Studley Case, supra, the court seems to have been of the opinion that there was no difference in principle between a set-off by the bank and the same result reached by the giving of a check by the depositor. The decision in this case is, however, rendered somewhat uncertain on this point by reason of the fact that it was expressly found in that case that the bank, when it received the checks, had no reasonable cause to believe that a preference would result. Moreover, it was held in the case of Ernst v. Mechanics' & Metals Nat. Bank, 2 Cir., 201 F. 664, that a deposit in a bank by a depositor, after the bank had knowledge of his insolvency, or at least after the bank is put on inquiry, to repay a loan, is a voidable preference under section 60b of the Act of Bankruptcy of 1898, as amended, 11 U. S. C. A. section 96(b).

Conceding, however, that there is no difference in principle between a set-off by the bank, and the same re-

sult reached by the giving of a check by the depositor, as to a mutual indebtedness between them, we find that the Studley Case is not controlling in the case at bar for two reasons: First, the bank had reasonable cause to believe, as found by the chancellor, that at the time of receiving the checks from the bankrupt depositor in payment of his notes he was insolvent, the bank then knowing that numerous accounts held by out-of-town creditors were being collected by local attorneys at Meridian on checks paid at the bank on their endorsements, and that numerous checks were being returned to such creditors unpaid on account of insufficient funds, together with a check for his light bill, and one to the state tax commissioner, while on the same days that the checks were being given by the bankrupt to the bank in payment of his notes there were numerous other checks being returned unpaid; and, second, the mutual indebtedness existing between the bank and the bankrupt at the beginning of each day's business on the days when checks were given to the bank as payments on the notes of the bankrupt was insubstantial in amount, and it clearly appears that substantial deposits were made on those days for the sole purpose of creating a balance out of which his checks to the bank on the notes could be paid. For instance, during the month of December, 1935, the average daily balance in the bank account of the bankrupt was $16.73, and on the morning of December 9th, when his bank balance was only $29.07, he gave the bank a check in payment of his note for $451, and on that same day made a deposit to cover the check; on the morning of the 16th his bank balance was only $24.-36, and he gave the bank a check for $400 on a note, and made a deposit to cover the check; on the morning of the 21st his bank balance was $54.86, and he gave the bank a check for $107.60 on a note, and made a deposit which, when added to the balance on hand, was nearly sufficient to cover the check; on the morning of the 23rd his bank balance was $3.97, and he gave the bank a check

for $102.50 on a note, and made a deposit to cover the check; on the morning of the 24th his bank balance was $1.38, and he gave the bank a check for $102.50, and made a deposit to cover the check; and on the morning of the 26th his bank balance was $3.09, and he gave the bank a check for $204 on a note, and made a deposit to cover the check. During this period the bankrupt knew that his trade accounts payable as of December 1, 1935, amounted to $6,822.18; that they were increasing to such an extent that on the date of his adjudication in bankruptcy on January 8, 1936, they amounted to $10,756.13; and that his total assets to be applied thereon, as well as for expense of his then inevitable bankruptcy, would not not exceed 15 per cent. in value of his liabilities. During the thirty days prior to adjudication he paid the appellee bank $1,467 in full payment of his notes, against which indebtedness the bank was entitled to offset the small balances above mentioned, which were carried forward into the day's business on each of the dates that the additional deposits in the bank, hereinabove mentioned, were made for the purpose of paying the notes; and which small balances, so carried forward, and not shown to have been deposited for the special purpose of creating a balance for the payment of the notes, amounted to the aggregate sum of $116.73, leaving a voidable preference of $1,350.27 received by the bank, and for which amount of preference, plus 6 per cent. interest per annum thereon from January 8, 1936, a decree is here rendered, it being conceded by the appellant that he is not entitled to recover the payments made by the bankrupt to the bank during the four-month period prior to the adjudication of bankruptcy, other than those made during the month of December, 1935.

Reversed and decree here on direct appeal, and affirmed on cross-appeal.