In the Matter of GRAVURE PAPER &
BOARD CORP., Bankrupt.
No. 182–54.

United States District Court
D. New Jersey.
April 16, 1957.

Max L. Rosenstein, by Harry A. Margolis, Newark, N. J., for trustee in bankruptcy of Gravure Paper & Board Corp.

Crummy, Consodine, Gibbons & O'Neill, by Thomas J. O'Neill, Newark, N. J., for Andrew Karlin.

HARTSHORNE, District Judge.

Andrew Karlin, a creditor of the bankrupt, Gravure Paper & Board Corporation, has petitioned this Court for review of the Referee in Bankruptcy's denial of his application to turn over at once certain sums of money in the hands of the Trustee in Bankruptcy to which Karlin claims he is entitled.

The record shows in substance the following facts: The Apex Discount Corporation held a chattel mortgage on personal property of the bankrupt corporation. Its application for the turn-over of this property was stayed because the Trustee contested the validity of the

mortgage. Thereupon the mortgagee and the Trustee agreed to sell the property covered by the mortgage free and clear of the mortgage, the lien, if valid, to attach to the proceeds. Certain properties were sold under this agreement, but the sale of the bulk of the property to one Charles Bobker fell through, upon Bobker's confinement to a mental institution. In August 1954 the assets not yet sold were transferred to Karlin for $1,000, subject to the lien of the mortgage, the validity of which was upheld.

Thereafter, Karlin, who was the guarantor on the mortgage by Gravure to Apex, paid off Apex Discount Corporation and received the chattel mortgage by assignment and subrogation. As a result Karlin might well be entitled ultimately to the proceeds of the above property, originally sold free and clear of the mortgage lien. Though a question may exist, if Karlin must not first credit on this lien the value of the property he bought subject thereto, before he can satisfy his lien from the above sale proceeds, also subject to such lien, in which the other creditors have an interest. But the Referee's denial of Karlin's application for the turn-over of the proceeds, resulting from the sale of the property sold free and clear, was not based upon any doubt as to his ultimate right to it, but rather was based on the fact that the Trustee had begun a plenary action in New York against Karlin to recover alleged preferential payments to him in a separate transaction with the bankrupt. The bringing of this action was approved by the Referee. The only issue strictly before this Court is thus the question presented by the Referee's certificate of review "May a Referee deny payments of funds to a secured creditor, pending the disposition of a suit by the Trustee to recover alleged preferential payments made by the bankrupt to that secured creditor and another person?"

■ The Trustee relies upon two specific sections of the Bankruptcy Act as well as the general powers of a court of equity to support the Referee's determination. The first ground is that the secured claim of Karlin may be denied under Section 57, sub. g. of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. g, which reads as follows:

"The claims of creditors who have received or acquired preferences * * * shall not be allowed unless such creditors shall surrender such preferences * * *."

However, in the one reported case on the subject, In re Franklin, D.C.N.C. 1907, 151 F. 642, it was held that this section does not apply to a secured creditor. In accord with this, see 3 Collier on Bankruptcy 57.19, pages 245–6. That these authorities are correct is indicated by the fact that turnover to a secured creditor of property covered by the lien of his mortgage does not result in aggravating the effect of the preference, since such proceeds are not available for the claims of general creditors.

■ Section 68 of the Bankruptcy Act, 11 U.S.C.A. § 108 dealing with mutual set-offs between the bankrupt estate and creditors, the other section of the Bankruptcy Act relied on by the Trustee, is only helpful by analogy. The obvious purpose of this section was to benefit creditors of bankrupts who also were debtors of the bankrupt, and to save them from paying their debt to the bankrupt in full, and receiving in return only a dividend. Since Karlin here is ultimately entitled to full payment of the amount of the mortgage, so far as his own property and the above proceeds permit, and the Trustee, if successful in his New York action, is similarly entitled to full payment, Section 68 has no direct application.

But it does indicate a primary goal of bankruptcy, in fact the goal of every court of equity. That is, "to avoid a circuity of action" and legal procedure, and to eliminate the legal "absurdity of making A pay B where B owes A." Studley v. Boylston National Bank, 1913, 229 U.S. 523, 33 S.Ct. 806, 808, 57 L.Ed. 1313.

■ Were the Trustee a private person, and were he being sued for these

proceeds, he could assert as his counterclaim or set-off any debt of any nature which Karlin owed him, including this claim of preference. But the Trustee cannot accomplish this result here, since the recovery of a preferential payment is not within the summary jurisdiction of the Bankruptcy Court.

■ Thus, if the Trustee is ordered to pay Karlin now, even after the above marshalling of the assets subject to Karlin's lien, and if the Trustee thereafter recovers a judgment against Karlin in New York, the Trustee may very well have to engage in extensive legal proceedings in order to realize on his judgment, even assuming it is ultimately collectible. It would thus seem that the Referee's denial of the present application is justified under the above general equitable principles which are applicable to a court of bankruptcy.

■ Further, in the last analysis, it would seem that we are dealing with a matter primarily resting within the broad discretion of the Referee in closing out the estate of the bankrupt. Originally the Referee did not deny Karlin's application, but adjourned it without date pending the outcome of the New York proceedings. It was only at Karlin's explicit request that this was framed in the form of a denial. Thus we are not now faced with an actual order adjudicating against the ultimate right of Karlin to this money, but with a decision as to the timing of the distribution of proceeds. This is primarily one of administration of the bankrupt estate, and therefore within the discretion of the Referee.

■ Finally, when Apex consented to the sale of the security under its mortgage, the lien to attach to the proceeds, it did so primarily to avoid depreciation of the property subject to the mortgage, while the validity of its lien was being promptly adjudicated in bankruptcy. Having taken advantage of bankruptcy for its benefit, it follows that the disadvantages and delays necessary to the equitable distribution of the bankrupt's estate must also be accepted. "The tail goes with the hide". Montana Power Co. v. U. S., D.C.N.J.1954, 121 F.Supp. 577, 583, affirmed, 3 Cir., 1956, 232 F.2d 541, 544. When Karlin stepped into the shoes of Apex, this principle applied equally to Karlin. While this delay may deprive Karlin of the use of the money temporarily, he is theoretically recompensed therefor by his right as a secured creditor to include post bankruptcy interest in his claim. Matter of Tele-Tone Radio Corp., D.C.N.J.1955, 133 F.Supp. 739.

Since the order of the Referee was correct, the prayer of the petition will be denied.