In re NORTHEAST ENTERPRISES, INC., Debtor.

No. 02–38286 SR.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 3, 2005.

Jay G. Ochroch, Fox Rothschild O'Brien & Frankel, LLP, Philadelphia, PA, for Debtor.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

*Introduction*

Before the Court is the Debtor's Amended Objection to the Tax Claims of the Commonwealth of Pennsylvania. The Objection is opposed. For the reasons set forth below, the Objection to the claims is denied.

*Procedural Background*

The Department of Revenue (Revenue) filed two claims (# 21 for $19,234.48 and # 27 for $254,164.57) and the Department of Labor & Industry (L & I) one (# 26 for $7342.82). The Debtor objected to all three for two reasons: that each was filed in an incorrect amount and that after adjustment, the total of the three claims is more than offset by the $205,000 in unpaid employer contributions which L & I is holding in a reserve account. *See* Amended Objection ¶¶ 3,5. The Objection seeks a setoff of the adjusted total amount of the three claims against the funds held in reserve and payment of the differential (about $77,000) to the Debtor. *Id.* Both Departments oppose this arrangement.

At the hearing the parties were able to stipulate to the amount of all three claims before the proposed setoff. Transcript (T-) 44, 48. That narrowed the dispute to the permissibility of the setoff. The parties submitted briefs on this issue and the matter was taken under advisement.

*The Parties' Positions*

Debtor maintains that the funds held by L & I in reserve are property of the estate (*see* Debtor's Brief, 4) and are, therefore, subject to setoff. And, says the Debtor, not only may the "reserve" funds be setoff against the sales tax claims, but the setoff should take effect retroactively to setoff off the *principal* amount of the tax claims in full satisfaction of what was owed. In other words, argues the Debtor, interest and penalties were improperly assessed where there was sufficient money on hand elsewhere within the Commonwealth (i.e., at L & I) to pay the tax. Any amount in excess of the principal tax debt should be refunded to it, says the Debtor. *See* Amended Objection, prayer.

Revenue defers to L & I on the issue of the permissibility of the setoff. It disagrees, however, with the contention that if the setoff is proper, then that means that its claim should not contain an interest and penalties component. *See* Revenue's Brief.

L & I argues that the Debtor may not setoff the funds against the tax claim because it has no rights in the funds. L & I's Brief, 2–11. Moreover, even if the Debtor could request a refund of the contributions to L & I, the Bankruptcy Code, it argues, prohibits this Court from granting a refund without the request having been first made at the state level. *Id.*, 12–13.

*Analysis*

 Because the Debtor's second argument is a corollary to the first, the Court will begin with the setoff question. Section 553 of the Bankruptcy Code preserves the right of setoff:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...

11 U.S.C. § 553. The Supreme Court has explained the applicability of setoff in bankruptcy cases:

The right of setoff (also called "offset") allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A." *Studley v. Boylston Nat. Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 57 L.Ed. 1313 (1913). Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy.

*Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995). In order to possess a right of setoff, there must be a mutuality of obligations between the debtor and the creditor asserting a right to setoff. As stated by the Third Circuit Court of Appeals, "[t]o be mutual, the debts must be in the same right and between the same parties, standing in the same capacity." *In re Bevill, Bresler & Schulman Asset Management Corp.,* 896 F.2d 54, 59 (3d Cir. 1990) (quoting L. King, 4 *Collier on Bankruptcy,* ¶ 553.04[3], at 553–22 (15th ed.1979)); *accord, e.g., In re Davidovich,* 901 F.2d 1533, 1537 (10th Cir.1990). The term "debt" is defined in § 101 to mean "liability on a claim." 11 U.S.C. § 101(12) In almost every respect, the definition of "debt" tracks the definition of "claim." *Pennsylvania Dep't of Publ. Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990). "Claim" is defined as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5) As a general rule, an obligation that would constitute a proper prepetition claim under § 553 if asserted by a creditor will likewise constitute a proper prepetition debt if asserted by the debtor. 5 *Collier on Bankruptcy,* ¶ 553.03[2][a].

The contention that the reserve account is property of the estate is an implied claim against L & I for those funds. What interest, if any, does the Debtor have in those contributions? While § 541 broadly defines "property of the estate," the Court must turn to applicable non-bankruptcy law to determine if the Debtor has an interest in these funds. *See Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

 The Pennsylvania Unemployment Compensation Law (the UC Law) was enacted to secure to employees some degree of economic security and remove the effect of seasonal unemployment and economic depression. *Department of Labor and Industry v. New Enterprise Rural Electric Co-op.,* 352 Pa. 413, 416, 43 A.2d 90, 92 (1945). The UC Law requires employers to make contributions for the privilege of offering employment. *Id.* The required

contributions are set by formulae—referred to as "experience ratings"—found in the Act. *See* 43 P.S. § 781 et seq. For each employer, L & I maintains a reserve account. 43 P.S. § 782. The reserve is the amount contributed less the amounts paid out in employee claims. *Id.* The parties stipulate that the Debtor's reserve account has a positive balance of about $205,000.

Debtor's argument that the contributions in the reserve account are "assets" of the employer who makes them is based on *Baldwin–Lima–Hamilton Corp., v. Dep't of L & I*, 48 Pa.D. & C.2d 341, 1969 WL 7844 (1969). For its part, L & I reads that case for the contrary proposition. As the parties disagree on what *might* be dispositive authority, a thorough analysis of that case is warranted.

In *Baldwin*, BLH Pa., a Pennsylvania corporation, merged into Armour and Company, a Delaware corporation. On the very same day as that merger, Armour transferred the assets it had acquired from BLH Pa to BLH Del, a Delaware corporation newly formed and wholly owned by Armour. After the merger, L & I attributed the BLH Pa reserve account and experience rating to BLH Del under the successor-in-interest provisions of the UC Law.[1] This meant that BLH *Del*—an ostensibly new business—would have to pay the substantially higher contribution rate that BLH *Pa*—an established entity—had been assessed. BLH Del obtained administrative review of the assessment but its request for adjustment was denied by the agency. 48 D. & C.2d at 342–43.

On appeal to the Court of Common Pleas, the higher assessment was struck down. That court held that the successor-in-interest provisions of the Act did not apply to BLH Del. 48 Pa.D. & C.2d at 347. But the *Baldwin* Court's rationale was not based on a finding that the funds in reserve were (or were not) an asset of the employer. Notwithstanding, both parties quote *Baldwin* in more than one instance for this very proposition. This Court is thus constrained to quote the case at length to show that neither reading can be supported:

> The insurmountable barrier to acceptance of the department's ultimate conclusion is the initial premise upon which it rests, that the reserve account balance of BLH Pa. was an asset in the hands of Armour as a result of its merger with BLH Pa. This begs the very question in issue.

> An employer reserve account balance is purely a creature of the Unemployment Compensation Law. Absent the statute, it simply would not exist. As created by the statute, it is but one element of a concept known as experience rating by which an employer's contribution rate is determined. The experience rate to which a particular employer will be entitled is based upon three factors: (1) the funding factor; (2) the experience factor, and (3) the State Adjustment factor. It is in the funding factor that the employer's reserve account plays a part, and it is essentially a book account on the records of the department to which the employer's contributions are credited and against which certain benefit claims

---

1. *See* 43 P.S. § 781(d)(1)(B). Under this provision, a bulk sale of a business to what are, essentially, the same principals requires the transfer of the prior business' experience rating and reserve account to the successor entity. *See Armco v. L & I*, 713 A.2d 1208, 1209 (Pa.Cmwlth.1998) (rejecting successor's challenge to transfer of predecessor's experience rating to it because same director and officer of predecessor served in same capacity for successor)

are debited. At any one time it may reflect a credit or debit balance.

This is the "asset" of BLH Pa. which the department urges passed by operation of law to Armour when the two merged under a merger agreement providing for the transfer and assignment of all property, franchises, etc., of BLH Pa. to Armour upon the effective date of the merger.

Assuming arguendo that immediately prior to the merger the reserve account balance of BLH Pa., being a credit, was something of value to it and thus an asset of BLH Pa., it does not and cannot follow that by application of principles of contract law or corporation law it was assigned or transferred to Armour and thus became an asset in its hands. This is so because the statutory law which created the concept of reserve accounts for experience rating purposes (and thus gave it whatever value it has as to a particular employer) just as definitively speaks on the subject of its transferability to the successor-in-interest of the employer in whose name the reserve account stands.

It first recognizes a voluntary transfer of an employer reserve account in whole or in part to successor-in-interest subject to certain conditions and limitations: Section 301(d)(1)(A). The parties here agree that such a voluntary transfer of BLH Pa.'s reserve account to Armour was not sought.

It next requires such transfers under certain conditions. It is conceded by the department that the mandatory provisions of section 301(d)(1)(B) are not applicable to the merger of BLH Pa. and Armour, as neither was owned nor controlled by the other. It is at this point that we totally exhaust any provisions of the Unemployment Compensation Law by which BLH of Pa.'s reserve account could have been transferred or was transferred by mandate to Armour. Inasmuch as Armour neither sought voluntary transfer nor was subject to mandated transfer of the reserve account of BLH Pa., it cannot be said that it was something of value in the hands of Armour or that the full amount of the reserve account was transferred to Armour by operation of law. Whatever value it had to BLH Pa. was at this point entirely lost. Having never been transferred to Armour, there was no reserve account balance of BLH Pa. in the hands of Armour upon which section 301(d)(1)(B) could operate to mandate further transfer from Armour to BLH Del.

For the foregoing reasons, we conclude [t]hat the employer reserve account of BLH Pa. immediately prior to its merger with Armour was not an "asset" in the hands of Armour by operation of law upon the effective date of the merger, and Armour did not become a transferee thereof by reason of the provisions of section 301(d)(1)(A) or 301(d)(1)(B) of the Unemployment Compensation Law 48 Pa.D. & C.2d at 345–347. Contrary to Debtor's contention, *Baldwin* never states that reserve funds are the employer's asset. Any such references are either stated in the subjunctive or are qualified in quotations. At the same time, however, *Baldwin* does not support the counter-proposition; i.e., that a reserve account is *not* an asset of the employer. Merely because the case states that the reserve account was *not* an asset of the *transferee* does not require the same inference as to the *transferor.* The Court cannot draw the hard conclusions from *Baldwin* that either party suggests.

*Does the Record Show That Debtor is Entitled to a Refund from L & I?*

The Amended Objection asserts that the Debtor has a right of setoff pursuant to

§ 791 of the UC Law. *See* Amended Objection, ¶ 3. That section of the statute provides:

Refunds and adjustments

If any individual or organization shall make application for refund or credit of any amount paid as contribution, interest or penalties, under this act, and the department shall determine that such amount, or any portion thereof, was erroneously collected, the department may at its discretion either allow a credit therefor, without interest, in connection with subsequent contribution payments or shall refund from the Unemployment Compensation Fund, without interest, the amount erroneously paid[.] ... No refund or credit shall be allowed with respect to a payment as contributions, interest or penalties, unless an application therefor shall be made on or before, whichever of the following dates shall be the later: (a) one year from the date on which such payment was made, or (b) four years from the reporting due date of the reporting period with respect to which such payment was made. For a like cause and within the same period, a refund may be so made or a credit allowed on the initiative of the department.

43 P.S. § 791. Debtor's reference to this provision of the UC Law is, therefore, an implicit request for a refund. As unemployment contributions are akin to taxes,[2] refunds of these contributions would constitute property of the bankruptcy estate. *See In re Thomas*, 231 B.R. 581, 587 (Bankr.E.D.Pa.1999) *citing Kokoszka v. Belford*, 417 U.S. 642, 647–48, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974) (holding that post-petition tax refunds which derive from pre-petition income are property of the bankruptcy estate). Has the Debtor established a right to a refund from L & I?

At the hearing, the Debtor testified that it applied for a rate adjustment for the year 2001 but was denied. T–47,48. There is no indication in the record that any later challenges were filed. The record accordingly shows no basis for the Court to conclude that the Debtor is owed a refund from L & I. If that is the case, then the Debtor has no right to apply the funds held by L & I for setoff or any other purposes.

*May this Court Determine Debtor's Right to a Refund*

 Aside from the question of entitlement to a refund, L & I maintains that this Court lacks the power to fashion such relief. L & I bases this argument on § 505 of the Bankruptcy Code which provides:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

...

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

11 U.S.C. § 505(a). The Third Circuit has specifically held that a bankruptcy court

---

**2.** *See Lehigh Valley Cooperative Farmers v. Bureau of Employment Security,* 498 Pa. 521, 524, 447 A.2d 948, 949 (1982) (noting that unemployment contributions are taxes).

lacks jurisdiction under § 505(a)(2)(B) to order a tax refund where the taxpayer failed to contest the payments in accordance with applicable non-bankruptcy law. *In re Custom Distribution Services, Inc.,* 224 F.3d 235, 243 (3d Cir.2000). The record indicates that Debtor appealed the contribution rate for the year 2001 but was unsuccessful. T–47. There is no other evidence of requests for refunds or adjustments. Thus, any consideration of a refund by this Court is limited to the calendar year 2001.

The Pennsylvania Supreme Court has made clear that "a refund could be allowed if the rate is admittedly correct but an overpayment was made due to a mathematical or typographical error. Or, if the rate had not become binding and final and the rate was adjusted either by the department or by the court, a refund could be allowed, within the period of limitation prescribed." *Daystrom, Inc. v. Batt,* 390 Pa. 586, 136 A.2d 116, 118 (1957). And if a refund is sought, the request must be made within the deadlines stated above or an even incorrect contribution rate would be binding. *See Lehigh Valley Cooperative Farmers v. Bureau of Employment Security,* 55 Pa.Cmwlth. 13, 25, 423 A.2d 18, 23 *rev'd on other grds,* 498 Pa. 521, 447 A.2d 948 (1982).

Debtor has offered no evidence bearing on the assessment for calendar year 2001. The Court is not informed of what the contribution rate was or the amount that Debtor paid for that period. There is thus no proof whatsoever that Debtor is entitled to a refund for that year.

*Summary*

Because the funds held in reserve with L & I cannot be deemed to be property of the estate, the Debtor may not set them off against tax debt. To the extent that Debtor claims a right to a refund from L & I, this Court may not now hear such claims for the tax years for which Debtor did not first request a refund from the Commonwealth. For the one year in which Debtor did appeal, the appeal was denied and the Debtor has provided no proof which refutes that determination. Its objection to this extent must similarly be rejected.

An appropriate order follows.

### ORDER

AND NOW upon consideration of the Debtor's Amended Objection to the Tax Claims of the Commonwealth of Pennsylvania, the Commonwealth's Responses thereto, after hearing held on September 30, 2004, and for the reasons stated in the foregoing Opinion, it is

ORDERED that the Objection is Denied.